RURICO S. DÍAZ APONTE, SECRETARIO DEL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR, en representación de JUAN R. TORRES CRUZ, demandantes y apelados, *v.* COMUNIDAD SAN JOSÉ, INC., demandada y apelante.

*Número:* AC-89-80          *Resuelto:* 23 de junio de 1992

*José A. Gallart*, abogado de la apelante; *Iván Ortiz Monroig*, abogado del apelado.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

■ Hoy, de manera principal, resolvemos la interrogante de si en nuestra jurisdicción resulta ser jurídicamente procedente la imposición de desacato civil a un ciudadano por el incumplimiento de una resolución del Departamento de Asuntos del Consumidor —consecuencia la misma de una controversia de índole privada— ordenando, en última instancia, el pago de una deuda dineraria. Decidimos que dicho procedimiento es incompatible con la prohibición contra encarcelamiento por deuda

contenida en la Constitución del Estado Libre Asociado de Puerto Rico.

I

Mediante Escritura Pública de 20 de marzo de 1981, el Sr. Juan R. Torres Cruz (el Comprador) adquirió de la Comunidad San José, Inc. (la Corporación o la Vendedora) un predio de terreno por la cantidad de once mil dólares ($11,000). Al acto de compraventa, en representación de la Corporación, compareció el Sr. Emilio Montilla Fullana en su calidad de Secretario Ejecutivo de la misma. Subsiguientemente, el comprador acudió a la Administración de Reglamentos y Permisos (A.R.Pᴇ.) con el propósito de solicitar un permiso de construcción, mas éste se le denegó ya que el terreno vendídole no estaba segregado y se encontraba en una zona inundable. El Sr. Torres Cruz exigió, entonces, de la Corporación la devolución del importe pagado. Al no obtener respuesta a su petición, el Comprador radicó querella ante el Departamento de Asuntos del Consumidor (D.A.Co.) el 27 de junio de 1983.[1]

El 21 de febrero de 1984 se celebró una vista administrativa en las oficinas de D.A.Co. a la cual comparecieron los señores Torres Cruz y Montilla Fullana. Esta vez, este último compareció en calidad de Presidente de la Corporación. Las partes estipularon que dentro de los ciento diez (110) días siguientes la Corporación readquiriera el predio en controversia por la suma pagada por el Comprador; de no cumplirse con lo estipulado, se acordó que la Corporación pagaría al señor Torres Cruz la cantidad de once mil quinientos dólares ($11,500) a los diez (10)

---

[1] En el curso de la investigación realizada por el Departamento de Asuntos del Consumidor (D.A.Co.), oficiales de la Administración de Reglamentos y Permisos (A.R.Pᴇ.) informaron que el proyecto de la Corporación era clandestino, ya que ésta había estado desarrollando dichos terrenos sin la correspondiente aprobación de A.R.Pᴇ.

días de expirado el término original. El 27 de junio de 1984, D.A.Co. emitió resolución aprobando la referida estipulación y ordenando su estricto cumplimiento.

La Corporación no honró su compromiso. Ante el reclamo del señor Torres Cruz, la Vendedora se comprometió por escrito a devolver la suma acordada para el 20 de julio de 1984. Una vez más, sin embargo, la Corporación incumplió. Así las cosas, D.A.Co. acudió al Tribunal Superior, Sala de Mayagüez, donde, luego de numerosos trámites que no ameritan exposición detallada,(²) el tribunal de instancia dictó sentencia el 9 de diciembre de 1988 ordenando a la Corporación a cumplir con la obligación acordada *so pena de desacato*. El tribunal señaló vista de seguimiento para el 12 de enero de 1989 disponiendo que, de la Corporación haber incumplido con la orden anterior, Montilla Fullana debía comparecer para ser ingresado a la cárcel "por desacato civil hasta tanto compl[iera] con lo ordenado".(³)

Llegado el día 12 de enero sin la Corporación haber cumplido con la orden por alegadamente no tener dinero, el tribunal dictó sentencia ordenando a Montilla a comparecer para ser ingresado a la cárcel el 23 de febrero. El 25 de enero, Montilla Fullana radicó moción de reconsideración, la cual fue rechazada de plano. El 10 de febrero radicó escrito de apelación en el tribunal de instancia y el 17 de febrero moción en auxilio de jurisdicción ante este

---

(²) Entre otras cosas, el 3 de septiembre de 1985 el Tribunal Superior celebró una vista donde concedió hasta el 16 de diciembre de 1985 para que se efectuara el pago. Vencido este plazo sin que se cumpliera con la obligación, el tribunal concedió un nuevo término que se extendió hasta el 1ro de mayo de 1986. Posteriormente se decretó la paralización de los procedimientos debido a que el señor Montilla, su esposa y la Corporación se habían acogido a la protección de la Ley Federal de Quiebras. Sin embargo, el Tribunal de Quiebras desestimó la petición de los esposos y de la Corporación el 24 de febrero de 1984 y el 29 de diciembre de 1987 respectivamente, lo que dio lugar a que se continuaran los procedimientos en el Tribunal Superior.

(³) Véase Escrito de Apelación, Minuta de 9 de diciembre de 1988, pág. 7.

Tribunal. En los referidos escritos, se le imputó al foro de instancia haber errado

1 ...al dictar Sentencia en el presente litigio ya que carecía de jurisdicción sobre la materia"
2 ...al dictar Sentencia ordenando la prisión por desacato civil del presidente de la apelante porque viola las disposiciones del mandato expreso de la Sección 11[, ] Artículo 2, de la Constitución del Estado Libre Asociado de Puerto Rico al efecto de que nadie será encarcelado por deuda[;]
3 ...al dictar Sentencia ordenando la prisión por desacato civil del presidente de la apelante porque viola las disposiciones o mandato expreso de la Sección 7 del Artículo 2 de la Constitución del Estado Libre Asociado de Puerto Rico menoscabando el derecho al debido proceso de ley de éste[, y]
4 ...al dictar Sentencia ordenando la prisión por desacato civil del presidente de la apelante porque constituye una desigual aplicación de la ley violando la Sección 7 del Artículo 2 de la Constitución del Estado Libre Asociado de Puerto Rico. Escrito de apelación, pág. 4.

Considerado el recurso radicado como uno de revisión, concedimos término a la parte demandante recurrida para que mostrara causa por la cual no debiera expedirse el auto solicitado y dictarse sentencia revocatoria de la emitida por el Tribunal Superior. Se ordenó asimismo la paralización de los procedimientos a nivel de instancia hasta tanto otra cosa se dispusiera por este Tribunal. La parte recurrida ha comparecido. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## II

Como claramente surge de una lectura de la relación de hechos, y de los señalamientos de errores que hace la parte recurrente, *realmente son tres (3) las controversias o interrogantes que plantea el recurso ante nuestra consideración.* Es nuestra encomienda, *en primer lugar*, determinar si D.A.Co. tiene, en términos generales, la facultad en ley para solicitar el auxilio del tribunal de ins-

tancia con el fin de que se ordene el fiel cumplimiento de una estipulación pactada por las partes —la cual contempla el pago de una suma de dinero por una parte a la otra— estipulación que dicho organismo administrativo refrendó mediante la emisión de una resolución administrativa a esos efectos. En *segundo término*, debemos dilucidar la procedencia y juridicidad de la imposición de un desacato civil a un oficial de una corporación, en su capacidad personal, por la desobediencia en que incurrió la corporación. *Por último*, debemos determinar la constitucionalidad de una orden de reclusión, emitida por un tribunal por vía del desacato civil, de quien no satisface una suma de dinero impuesta mediante una resolución emitida por el Departamento de Asuntos del Consumidor.

■ Es norma de derecho firmemente establecida que este Tribunal no juzgará la constitucionalidad de un estatuto si existe fundamento alterno que permita disponer del caso. *Pueblo v. Marrero*, 79 D.P.R. 649, 652 (1956); *Mari Bras v. Alcaide*, 100 D.P.R. 506, 513 (1972); *Molina v. C.R.U.V.*, 114 D.P.R. 295, 297 (1983); *Pueblo ex rel. M.G.G.*, 99 D.P.R. 925, 927 (1971); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, pág. 140. Los primeros dos (2) de los señalamientos de error promulgados por el recurrente se presentan como posibles avenidas de disposición alterna; razón por la cual pasamos a evaluar los mismos en primer término.

### III

El primer señalamiento del recurrente —mediante el cual cuestiona la jurisdicción del tribunal de instancia para entender en un recurso de revisión relativo a una resolución emitida por D.A.Co. mediante la cual se le or-

dena a una parte pagarle una suma de dinero a otra— *es claramente inmeritorio.*

■ Señala el recurrente que la ley habilitadora del D.A.Co. —Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341 *et seq.*)— únicamente faculta al Secretario de dicho organismo administrativo a "recurrir al Tribunal Superior de Puerto Rico en solicitud de que se ponga en vigor *cualquier orden de cesar y desistir* por él emitida *o cualquier orden correctiva*". (Énfasis suplido.)[4] A base de ello argumenta, erróneamente a nuestro juicio, que una resolución mediante la cual se ordena el pago de una suma de dinero no constituye una "orden de cesar o desistir" ni una "orden correctiva"; razón por la cual, alegadamente, el tribunal de instancia carecía de jurisdicción para entender en el recurso administrativo radicado.

■ No tiene razón. Una simple lectura de las disposiciones del Art. 6(i) de la citada Ley Núm. 5 (3 L.P.R.A. sec. 341e(i)) es todo lo que se requiere para poder uno percatarse de ello. El mismo dispone que el Secretario de D.A.Co. tendrá facultad para:

Interponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de este Capítulo y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento.

■ Esto no debe sorprender a nadie. Una agencia como D.A.Co., que naturalmente carece del poder coercitivo que ostentan los tribunales para exigir el cumplimiento de sus órdenes y resoluciones, sólo podría cumplir los propósitos para los cuales fue creada si goza del poder de acudir a los tribunales invocando su auxilio para el ejercicio efectivo de sus facultades. El legislador así lo reconoció y así le facultó por medio de la citada sec. 341(e)(i).

---

[4] Art. 13(e) de la Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341*l*(e)).

Por otro lado, aun cuando no cabe duda que la orden del Secretario es, en última instancia, una orden obligando el pago de una deuda dineraria, no vemos razón alguna por la cual este hecho impida que la misma sea considerada, a su vez, como una "orden correctiva". No debemos perder de vista que este litigio surge como consecuencia de la venta fraudulenta de un predio de terreno inservible por parte de la Corporación recurrente al recurrido señor Torres Cruz. Durante el curso de los procedimientos ante D.A.Co., las partes acordaron que se devolverían las prestaciones correspondientes (tanto la suma de dinero pagada como el "título" sobre el terreno en controversia) en reconocimiento de la práctica engañosa de la cual fue objeto el Comprador. Al aprobar la estipulación y ordenar su estricto cumplimiento, el Departamento en efecto determinó que los derechos de un consumidor fueron violentados y que la forma de rectificar esa injusticia era ordenando la devolución de las prestaciones. Su resolución fue, de hecho, una orden que perseguía *la corrección* de una situación que representaba un ataque a los derechos de un consumidor *o, en otras palabras, una orden correctiva.* El hecho de que hubiera dinero envuelto es sólo un elemento particular de ese litigio, como lo es en la inmensa mayoría de los casos resueltos por la referida agencia. Cuando D.A.Co. acudió al tribunal en el caso de autos lo hizo para exigir el cumplimiento de una resolución administrativa, final y firme, emitida por esa Agencia que ordenaba a ambas partes devolver ciertas prestaciones; el hecho de que al pasar por el tamiz de la Agencia la misma se convirtió en una orden obligando a solo una parte a pagar una suma de dinero (ya que la otra parte había cumplido con su obligación) no desvirtúa su carácter de orden "correctiva".

■■■ La posición que tomamos en el día de hoy es cónsona con la letra y el espíritu de la ley que creó el Departamento de Asuntos del Consumidor, Ley Núm. 5, ante. De

su "exposición de motivos" se desprende que el propósito del legislador fue el de crear un organismo de la más alta jerarquía, dotado de poderes amplios y efectivos para la protección del consumidor. Es principio de fuerte arraigo en nuestro derecho que a las leyes debe dársele el significado que valide el propósito que tuvo el legislador al aprobarlas. *Rivera Maldonado v. Autoridad Sobre Hogares*, 87 D.P.R. 453, 456 (1963); *ESSO Standard Oil v. A.P.P.R.*, 95 D.P.R. 772, 784 (1968); *P.P.D. v. Ferré, Gobernador*, 98 D.P.R. 338, 429 y 468 (1970); *Rodríguez Maldonado v. E.L.A.*, 114 D.P.R. 446, 448 (1983). Negarle al D.A.Co. la facultad de acudir a los tribunales con el fin de solicitar su "poder coercitivo" para que se cumplan sus resoluciones simplemente porque ésta al fin y al cabo se convirtió en una orden para que se pague una deuda monetaria, le restaría toda eficacia al esquema diseñado por el legislador. En reiteradas ocasiones hemos resuelto que este Tribunal rehusará atribuirle futilidad a los actos legislativos. *Flamboyán Gardens v. Junta de Planificación*, 103 D.P.R. 884, 888 (1975); *P.R. Tel. Co. v. Martínez*, 114 D.P.R. 328, 344 (1983); *Passalaqua v. Mun. de San Juan*, 116 D.P.R. 618, 631–632 (1985).

## IV

Determinado que D.A.Co. en efecto tenía facultad para solicitar el auxilio del tribunal de instancia, procede que nos enfrentemos a la segunda interrogante que plantea el presente caso, esto es, la juridicidad de la imposición del desacato civil a un oficial de una corporación por el incumplimiento en que incurre el ente corporativo.

La doctrina reconoce que las corporaciones, como personas jurídicas, pueden ser halladas incursas en desacato. 10A *Fletcher Cyc. Corp.* Sec. 5069 (Perm. ed.). Sin embargo, dados los principios de que la personalidad

jurídica de las corporaciones es separada y distinta a la de sus directores, oficiales y accionistas, y de que éstos gozan de una responsabilidad limitada, *Fleming v. Toa Alta Develop. Corp.*, 96 D.P.R. 240, 243 (1968), las órdenes vindicadoras de la dignidad de los tribunales (entre las cuales existe la posibilidad de la encarcelación) deben ir dirigidas, en primera instancia, al ente corporativo. Siendo las corporaciones entidades incorpóreas que carecen de configuración física y que, por lo tanto, su encarcelación resulta imposible, los tribunales han desarrollado un sinnúmero de doctrinas con el fin de balancear los intereses envueltos.

En primer lugar, recordamos que hemos resuelto reiteradamente que no se sostendrá la ficción jurídica de una corporación si ello equivale a sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen. *Cruz v. Ramírez*, 75 D.P.R. 947, 954 (1954); *J.E. Candal & Co. v. Rivera*, 86 D.P.R. 508, 513 (1962); *South P.R. Sugar Corp. v. Junta Azucarera*, 88 D.P.R. 43, 56 (1963); *Pereira v. I.B.E.C.*, 95 D.P.R. 28, 48 (1967); *Fleming v. Toa Alta Develop. Corp.*, ante; *Mill Factors Corp. v. Registrador*, 97 D.P.R. 379, 384 (1969); *González v. San Just. Corp.*, 101 D.P.R. 168, 172 (1973); *Ab Intestato Balzac Vélez*, 109 D.P.R. 670, 680–681 (1980); *J.R.T. v. Asoc. C. Playa Azul I*, 117 D.P.R. 20, 29 (1986). Para "descorrer el velo corporativo" se requiere, naturalmente, que se presente evidencia suficiente que justifique la imposición de responsabilidad, más allá del ente corporativo, a los directores, oficiales o accionistas de la corporación. *San Miguel Fertil. Corp. v. P.R. Drydock*, 94 D.P.R. 424, 430 (1967).

Existe en el derecho corporativo un segundo fundamento bajo el cual un tribunal efectivamente está facultado para encarcelar por desacato a un oficial de un ente corporativo. La doctrina ha reconocido que cuando un

oficial de una corporación tiene pleno conocimiento de una orden emitida por un tribunal y no toma acción, bajo sus poderes, para gestionar el cumplimiento de la obligación corporativa, éste puede ser encontrado incurso en desacato en su capacidad personal. Ocho (8) décadas atrás el Tribunal Supremo federal expresó al respecto:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt. *Wilson v. United States*, 221 U.S. 361, 376 (1911).[5]

Mas recientemente, el prestigioso comentarista corporativo Fletcher se expresó así:

> A duty imposed by an order of court of competent jurisdiction upon a corporation applies to the officers, agents and employees of that corporation, and takes effect, as to them, as soon as they have been served with the writ, or in fact have actual notice of the nature and scope of the order; it is not necessary to make them parties.
> ... If, after they have knowledge of the writ directed to the corporation, they prevent compliance or fail to take appropiate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt. But mere failure or refusal of the corporation to comply with the order of the court does not render the officer guilty. He must have neglected or refused to perform his part in carrying out the act required by the order of the court; if he lacked authority or opportunity to perform the act or any part of it, he is not guilty of contempt.

---

[5] Entre las jurisdicciones en las cuales se ha impuesto desacato a los oficiales o directores de una corporación que, teniendo la facultad para procurar el cumplimiento de una orden judicial no acatan el mandato, se encuentran: *NLRB v. International Shoe Corporation of P.R.*, 423 F.2d 689, 691 (1er Cir. 1984), *cert. denegado,* 106 S.Ct. 1458 (1986); *United States v. Seetapun*, 750 F.2d 601, 607 (7mo Cir. 1984); *Donovan v. Trinity Industries, Inc.*, 824 F.2d 634, 638 (8vo Cir. 1987); *U.S. v. Laurins*, 857 F.2d 529, 535 (9no Cir. 1988).

The managing officers cannot shield themselves from individual liability upon the plea that what they did was done by them as officers and agents of the corporation, and not in their own behalf as principals. *So the president is a proper person to punish for contempt, providing there is a duty resting upon him in respect to the thing commanded or enjoined.* He is not subject to contempt for default in performing an act which he cannot himself, without authority from others, perform. (Énfasis suplido.) *Fletcher,* ante, Sec. 5073.

■■■ El peso de la prueba recae, naturalmente, sobre la parte que solicita el desacato para establecer un caso *prima facie* de que la persona que desobedeció la orden tenía la capacidad para cumplirla; una vez establecido el caso *prima facie,* corresponde al oficial levantar la ausencia de facultades dentro del esquema corporativo para procurar el cumplimiento de la orden o la incapacidad de la corporación misma para cumplir con lo ordenado. *Cf. Combs v. Ryan's Coal Co. Inc.,* 785 F.2d 970, 984 (11mo Cir. 1986).

■■■ Resulta pertinente señalar que, de ser imposible determinar qué oficial de la corporación es responsable por el incumplimiento, el tribunal tiene a su disposición el mecanismo dispuesto por la Ley de Corporaciones en su Art. 1201, que dispone:

Cuando cualquier corporación se negare a cumplir cualquier orden de un tribunal competente, o dejare de cumplir tal orden o desatendiere su cumplimiento dentro del término que el tribunal fije para su observancia, tal negativa, falta de cumplimiento o desatención será causa suficiente para que se designe un administrador judicial de la corporación. 14 L.P.R.A. sec. 2201.[6]

---

[6] Una vez nombrado el administrador, éste podrá ser hallado responsable del incumplimiento de la corporación si se cumplen las condiciones expuestas en el texto.

## V

Habiendo determinado que D.A.Co. tenía la facultad de acudir ante el tribunal de instancia para solicitar que éste ordenara el cumplimiento de la resolución en controversia y que los tribunales tienen el poder de imponer desacato civil a un oficial de una corporación por la negativa de la corporación a cumplir con lo ordenado, *sólo nos resta determinar si el tribunal podía constitucionalmente imponer desacato civil a un oficial de una corporación que no cumplió con una orden emitida por éste que se reducía al pago de una deuda monetaria.*

El precepto constitucional que se alza como posible impedimento a que se utilice el desacato civil en relación con el incumplimiento de una resolución de D.A.Co. ordenando el pago de una cantidad de dinero —cual es el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1— *es claro y terminante.* El mismo reza simplemente así:

"Nadie será encarcelado por deuda."

Su importancia fue recalcada, en su génesis, en la Convención Constituyente, la cual expresó:

La [cláusula] que impide la encarcelación por deudas coloca la seguridad y la libertad de la persona por encima de los valores materiales, rechazando la posibilidad de que alguien pueda ser castigado en esta forma por no tener recursos con que atender sus obligaciones económicas. 4 Diario de Sesiones de la Convención Constituyente 2571 (1961).

A pesar de su lenguaje explícito, éste no ha estado inmune a la erosión jurisprudencial de los tiempos. Bajo la premisa de que prácticamente ninguna disposición constitucional goza de un carácter inflexible y absoluto ante el cúmulo de intereses públicos con los que periódica-

mente confligen,([7]) este Tribunal ha atemperado el mandato del Art. II, Sec. 11 de nuestra Constitución, ante, al señalar:

> La determinación de lo que constituye una "deuda" para los fines del Art. II, Sec. 11 de la Constitución, así como bajo el Art. 1811 del Código Civil, no es un ejercicio en puro razonamiento abstracto. La tabla de valores de la comunidad concernida es la que provee la clave. *Si una obligación privada tiene un carácter tan acentuado de deber social que lo segundo ahoga o sobrepasa lo primero, como en el caso de las pensiones alimenticias, la vía del apremio personal puede estar disponible.* Las excepciones a la norma general contraria a la prisión por deuda son contadas, tanto en el Derecho Civil como en el común. (Énfasis suplido.) *Viajes Lesana, Inc. v. Saavedra*, 115 D.P.R. 703, 710 (1984).

Para determinar hasta qué punto la situación del caso de autos puede ubicarse dentro de las "contadas" excepciones en las que el interés adelantado por la vía del apremio personal sobrepasa aquel representado por la prohibición constitucional contra el encarcelamiento por deudas, es necesario que examinemos, aun cuando brevemente, la situación jurídica actual de ambas figuras.

La prohibición contra el encarcelamiento por deudas en Puerto Rico proviene de dos (2) fuentes: el Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, ante —donde se incorpora el antiguo lenguaje del Acta Jones de 1917 (3 L.P.R.A. sec. 2)— y el Art. 1811 del Código Civil, 31 L.P.R.A. sec. 5171, donde se incorpora a nuestro ordenamiento el principio de la responsabilidad

---

([7]) Este Tribunal ha establecido que los derechos constitucionales no son absolutos y en ocasiones pueden quedar subordinados cuando la necesidad pública así lo requiera. *Democratic Party v. Tribunal Electoral*, 107 D.P.R. 1, 25 (1978) (Derecho de Asociación); *Agostini Pascual v. Iglesia Católica*, 109 D.P.R. 172, 177 (1979) (Separación Iglesia y Estado); *Rodríguez v. Srio. de Instrucción*, 109 D.P.R. 251, 255 (1979) (Libertad de Expresión); *Díaz v. Colegio Nuestra Sra. del Pilar*, 123 D.P.R. 765 (1989) (Libertad de Culto); *Pueblo v. Andréu González*, 105 D.P.R. 315, 320 (1976) (Debido Proceso de Ley); *Pueblo v. Santos Vega*, 115 D.P.R. 818, 821 (1984) (Libertad de Expresión); *Pueblo v. Rivera Arroyo*, 120 D.P.R. 115 (1987) (Juicio Rápido), y *E.L.A. v. P.R. Tel. Co.*, 114 D.P.R. 394, 401 (1983) (Derecho a la Intimidad).

patrimonial. El principio de la responsabilidad patrimonial "no es más que el término final de una larga evolución ... [respecto a] la condición del deudor, [que] ha sustituido la ejecución [de] la persona por la ejecución [de sus] bienes". Véase J. Castán Tobeñas, *Derecho Civil español, común y foral*, 13ma ed., Madrid, Ed. Reus, 1983, T. III, pág. 260. *En el pasado hemos sido enérgicos en la observancia de esta prohibición constitucional.* Así, en *Viajes Lesana, Inc. v. Saavedra*, ante, págs. 710–711, expresamos:

> ...[E]l incumplimiento de una orden judicial conlleva usualmente la sanción del desacato, *mas no puede utilizarse la resistencia al mandato de una corte como medio para lograr la prisión por deudas, inasequible por otras vías.* De ser ello posible bastaría con que un tribunal ordenase, bajo apercibimiento de desacato, que se pagase cualquier deuda ordinaria. Hace ya casi un siglo que el Código Civil les cerró este camino a los acreedores y a los propios tribunales al adoptar el principio de la responsabilidad patrimonial, norma que adquirió en 1952 rango constitucional. (Énfasis suplido.)

Ante tan enérgica postura, no es sorprendente el hecho de que a lo largo de nuestra historia jurídica sólo hallamos reconocido *una excepción* a la prohibición al encarcelamiento por deudas, y ello en una situación revestida del más alto interés público: *los casos de alimentos.* Véase *López v. Corte de Distrito de Guayama*, 31 D.P.R. 137, 145 (1922).

La importancia de esta única y singular situación nos mueve a examinar brevemente el desarrollo de la misma. Originalmente, este Tribunal se negó a reconocer la alternativa del desacato civil en los casos de incumplimiento de la pensión alimentaria. *Frau v. Canals*, 8 D.P.R. 120 (1905). No fue hasta varios años más tarde que se reconsideró esta postura a la luz de nueva legislación, reconociéndose la vía del apremio personal para aquellas instancias en que se incumplía con las obligaciones alimentarias. *López v. Corte de Distrito*, ante. A partir de

entonces reiteradamente se reconoció esta doctrina, *Villa v. Corte*, 45 D.P.R. 879 (1933); *Espinosa v. Ramírez, Alcaide de Cárcel*, 72 D.P.R. 901 (1951); ello así aún después de haberse elevado a rango constitucional la prohibición contra el encarcelamiento por deuda, *Sosa Rodríguez v. Rivas Sariego*, 105 D.P.R. 518 (1976).

Con relación a la figura del desacato civil, observamos que el poder inherente de todos los tribunales para obligar al cumplimiento de sus órdenes es de antiguo linaje. *Ex parte Robinson*, 86 U.S. 505, 513 (1873); *Ex Parte Bird*, 4 D.P.R. 234, 240 (1903). El mismo se basa en el sano principio de que la observancia de las órdenes de los tribunales por parte de aquellos contra quienes van dirigidas es de cardinal importancia para la administración de la justicia. *Cf. Maness v. Meyers*, 419 U.S. 449, 458 (1975); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911). El desacato civil debe distinguirse del desacato criminal:

> La verdadera distinción entre el desacato criminal y el civil estriba en la naturaleza y propósito del remedio. Si la intención es reparadora, a inducir a alguien a cumplir con una obligación, el desacato es de naturaleza civil. *Shillitani v. United States*, 384 U.S. 364 (1966). Si el objetivo es vindicar la autoridad del tribunal, el desacato es de orden penal. *United States v. Mine Workers*, 330 U.S. 258 (1947). *Pueblo v. Lamberty González*, 112 D.P.R. 79, 81 (1982).[7]

---

[7] La distinción entre desacato civil y criminal ha generado mucha jurisprudencia (*Oronoz v. Montalvo et. al.*, 21 D.P.R. 347 (1914); *Paniagua y El Pueblo*, 33 D.P.R. 902, 909 (1925); *Dubón v. Casanova*, 65 D.P.R. 835, 846 (1946); *Pueblo v. Lamberty González*, 112 D.P.R. 79 (1982)) y literatura (D.B. Dobbs, *Contempt of Court: A Survey*, 56 (Núm. 2) Cornell L.Rev. 183 (1971); 11 *Wright & Miller, Federal Practice and Procedure: Civil* Sec. 2960 (1973); *Civil and Criminal Contempt in the Federal Courts*, 57 Yale L.J. 83 (1947).

En *Hicks v. Feiock*, 485 U.S. 624 (1988), el Tribunal Supremo de los Estados Unidos estableció una distinción entre desacato civil y criminal dentro del contexto del incumplimiento de una pensión alimentaria. A estos efectos señaló que el desacato es de naturaleza civil cuando su naturaleza es remedial y para el beneficio del demandante, contrario al desacato criminal donde la sentencia es esencialmente punitiva.

Esta distinción resulta de singular importancia, ya que es precisamente la naturaleza reparadora del desacato civil lo que ha dado paso a que se le reconozca como excepción a la prohibición constitucional contra el encarcelamiento por deuda en los casos de alimentos. Es importante señalar que, aun en los casos de alimentos, *no* procederá la imposición del desacato cuando el obligado logra demostrar una causa justificada para su incumplimiento, situación en relación a la cual el alimentista carga con el peso de la prueba. *Villa v. Corte*, ante, pág. 900; *Munet v. Ramos*, 69 D.P.R. 353 (1948); *Rivera v. Torres*, 56 D.P.R. 583, 585 (1940); *Espinosa v. Ramírez, Alcaide de Cárcel*, 72 D.P.R. 901, 906 (1951). Es decir, aun en los casos de alimentos existen situaciones en que la prohibición constitucional prevalecerá; en esas situaciones, el desacato civil ha perdido su razón de ser y la balanza de intereses se inclina a favor de la prohibición constitucional.([8])

De lo que antecede *podemos discernir un principio fundamental*. La determinación del efecto que debe dársele a la prohibición constitucional contenida en el Art. II, Sec. 11 de nuestra Constitución, ante, dependerá en primera instancia de un balance en el que se antepondrán intereses de "[l]a tabla de valores de la comunidad concernida ...". *Viajes Lesana, Inc. v. Saavedra*, ante, pág. 710. Al sol de hoy sólo hemos encontrado una "obligación privada [que] tiene un carácter tan acentuado de deber social que ... sobrepasa" (íd.) el valor protegido por la prohibición constitucional, es decir, "la posibilidad de que alguien pueda ser [encarcelado] por no tener recursos con que atender sus obligaciones económicas". Diario de Sesiones, ante.

---

([8]) Una vez determinada la legitimidad del desacato civil, el obligado tiene a su haber la facultad de evitar ser encarcelado indefinidamente si logra demostrar una causa justificada para su incumplimiento, *Villa v. Corte*, 45 D.P.R. 879, 900 (1933), paga el importe adeudado o se encuentra detenido por un tiempo suficientemente largo como para que demuestre que mediante su reclusión no pueden obligarle a cumplir la orden, *Espinosa v. Ramírez, Alcaide de Cárcel*, 72 D.P.R. 901 (1951); *United States ex rel. Thom v. Jenkins*, 760 F.2d 736, 740 (7mo Cir. 1985).

La determinación de si las resoluciones emitidas por D.A.Co. obligando al pago de una deuda dineraria constituirán una excepción a la citada prohibición constitucional dependerá, pues, de cómo comparan los valores representados por la referida agencia administrativa con aquellos protegidos por los Constituyentes. Nos toca hoy determinarlo.

## V

El Departamento de Asuntos del Consumidor acudió ante el tribunal de instancia en solicitud de que se pusiera en vigor la orden que emitiera en el presente caso. Como sabemos, el Art. 13(e) de la Ley Orgánica del Departamento de Asuntos del Consumidor, ante, establece, *en lo pertinente*, que el "[i]ncumplimiento de una orden judicial declarando con lugar tal solicitud *constituirá desacato al Tribunal*". (Énfasis suplido.) La "ejecución" de dicha disposición estatutaria por parte del foro judicial, la cual puede desembocar en una orden de reclusión de la persona en la cárcel, es la que se alega "choca" con la disposición constitucional que prohíbe la encarcelación por deuda en situaciones, como la presente, en que la orden administrativa se circunscribe a ordenar el pago de una deuda dineraria. *Resulta forzoso, en consecuencia, cuestionarnos si la política pública que encarna el D.A.Co. es tan fundamental que supera la prohibición constitucional de cárcel por deuda.*

El Departamento de Asuntos del Consumidor, no hay duda, tiene a su cargo instrumentar una vasta gama de legislación,[9] Art. 6(d) de Ley Núm. 5, ante, 3 L.P.R.A.

---

[9] Ley Insular de Suministros, Ley Núm. 228 de 12 de mayo de 1942, según enmendada, 23 L.P.R.A. sec. 731 *et seq.*; Ley de Alquileres Razonables, Ley Núm. 464 de 25 de abril de 1946, según enmendada; 17 L.P.R.A. sec. 181 *et seq.*; Administración de Estabilización Económica, Ley Núm. 97 de 19 de junio de 1953, según enmendada, 23 L.P.R.A. sec. 701 *et seq.*; Ley de Ventas a Plazos y Compañías de Financiamiento, Ley Núm. 68 de 19 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 731

sec. 341e(d). El elemento común entre estas es la relación consumidor-empresario sobre la cual se erige prácticamente todo el andamiaje de la Agencia. No hay duda de que D.A.Co. como agencia administrativa, recoge una política pública importante en nuestra sociedad de consumo.([10]) Ello no significa, sin embargo, que todas las leyes que tiene dicha Agencia a su haber administrar encierren un fin público lo suficientemente importante como para equipararlas a un interés de rango constitucional. No podemos perder de vista que en la amplia gama de intereses públicos protegidos también suelen haber sus gradaciones. Las leyes que tiene D.A.Co. bajo su jurisdicción varían en el grado de política pública que encierran.

Dentro de este contexto no debemos perder de perspectiva que de aplicarse automáticamente el Art. 13(e) de la Ley Núm. 5, ante, procedería la reclusión por vía de desacato, a petición de la Agencia, por la violación a *cualquiera* de las legislaciones que instrumenta dicha Agencia y que conlleve la imposición de una "orden correctiva" relativa al pago de una deuda dineraria.

Pretender polarizar en términos absolutos la relación proveedor-consumidor equivale a perder de perspectiva los hechos particulares de cada caso, so pretexto de solucionar el contemporáneo problema de las sociedades consumeristas. No dudamos de que puedan existir instancias donde D.A.Co. podría convincentemente argumentar que el interés a ser vindicado por la Agencia amerita el uso del apremio personal; *no obstante el mandato constitucional es tajante y las excepciones tienen que necesariamente*

---

*et seq.*; Ley para Regular el Negocio de Áreas para el Estacionamiento Público de Vehículos de Motor, Ley Núm. 120 de 7 de junio de 1973 (23 L.P.R.A. sec. 805 *et seq.*); Ley para Proteger a los Compradores de Vehículos de Motor en P. R., Ley Núm. 77 de 31 de mayo de 1972 (23 L.P.R.A. sec. 1021 *et seq.*); Ley de Pesas y Medidas del Estado Libre Asociado de Puerto Rico, Ley Núm. 145 de 27 de junio de 1968 (23 L.P.R.A. sec. 901 *et seq.*).

([10]) Véase Exposición de Motivos de la Ley Núm. 5 de 23 de abril de 1973.

*ser contadas.* Aún en los meritorios casos de reclamaciones de alimentos, este Tribunal ha señalado que el desacato civil debe utilizarse con prudencia, *Sosa Rodríguez v. Rivas Sariego,* 105 D.P.R. 518, 522 (1976).([11]) *Una exclusión de la magnitud que se pretende adoptemos en el día de hoy sometería el mandato constitucional a tantas excepciones que lo desvirtuaría.*

▮ Un análisis comparativo entre la excepción a la prohibición constitucional que ha legitimado este Tribunal y la que se pretende que validemos hoy de forma automática, resultan del todo incompatibles. El presente caso resulta el mejor ejemplo de lo anteriormente expresado. No empece cuán dramático la parte apelada quiera presentar el cuadro fáctico que da lugar a este recurso, difícilmente pueda equipararse la devolución de la suma de Once Mil Quinientos Dólares ($11,500) por la venta de un terreno con una reclamación de alimentos de unos hijos menores necesitados.([12])

Una sentencia de alimentos comprende una necesidad imperiosa que por su propia naturaleza no admite prórroga, contrario a la devolución de un dinero en virtud de una negociación contractual. Para el consumidor existen alternativas como los métodos tradicionales de ejecución de sentencia, inapropiados para el alimentista dada la na-

---

([11]) De forma similar el Tribunal Supremo federal, en *Hicks v. Feiock,* ante, pág. 637, recientemente recalcó la precaución en que debe enmarcarse el uso del desacato civil:

"What is true of the respondent in this case is also true of any such convicted criminal: as long as he meets the conditions of his informal probation, he will never enter the jail. Nonetheless, if the sentence is a determinate one, then the punishment is criminal in nature, and it may not be imposed unless federal constitutional protections are applied in the contempt proceeding."

([12]) Se ha comentado respecto al desacato civil y su relación con las reclamaciones de alimentos:

"Civil contempt *should only* be utilized in child support and alimony proceedings where few, if any, viable alternative exist." (Énfasis suplido.) Nota, *Modern Discussion of a Venerable Power: Civil Versus Criminal Contempt and its Role in Child Support Enforcement: Hicks v. Feiock,* 22 (Núm. 1) Creighton L. Rev. 163, 184 (1988).

turaleza imperiosa de su necesidad. *La fuente de la obligación que se persigue vindicar suele ser un fiel indicador de la magnitud del interés envuelto*. En el caso de las pensiones alimentarias *la obligación nace de un deber legal matizado por un imperativo moral*; contrario al caso de autos que surge en virtud de la libre voluntad de las partes contratantes permeada, sin embargo, por la desigualdad económica que pretende atemperar D.A.Co.

Es factible imaginarnos múltiples instancias en las que una sentencia, resultado de un procedimiento ventilado en su totalidad ante un tribunal, envuelva un interés mucho más apremiante que una querella radicada ante D.A.Co. y llevada al foro judicial para su implantación y, sin embargo, a estos dictámenes exclusivamente judiciales no les cobija el mecanismo del desacato. Es por ello que resulta verdaderamente irónico que las sentencias producto de un procedimiento radicado en primera instancia ante una agencia administrativa (D.A.Co.) tengan accesible la vía del apremio personal independientemente del interés público protegido. Tan es así que una adjudicación de daños y perjuicios emitida por D.A.Co. gozaría del mecanismo coercitivo del desacato, contrario al dictamen de un tribunal concediendo daños.

■ *En el inevitable balance de intereses, la balanza necesariamente se inclina hacia la prohibición de cárcel por deuda*. Sin intención de menospreciar el gran interés público que representa la protección del consumidor en nuestra sociedad, resulta difícil visualizar un dictamen de este Tribunal reglamentando la cuestión en la forma en que el recurrido solicita. El interés público que esgrime el apelado no es lo suficientemente agudo para penetrar los dos (2) escudos que en *Viajes Lesana, Inc. v. Saavedra*, ante, reconocimos. La inconstitucionalidad del Art. 13(e) de la Ley Orgánica del Departamento de Asuntos del Consumidor, ante —*en la medida que se utilice para encarcelar a*

*quien no satisface una deuda monetaria, producto la misma de una controversia netamente privada, ordenada por D.A.Co.—* resulta por tanto inevitable. Estamos conscientes de que nuestra decisión tendrá el efecto de restar cierta rapidez a los procedimientos administrativos de D.A.Co., particularmente en su etapa de ejecución; decidir lo contrario, sin embargo, implica pagar un precio muy alto en nuestra sociedad contemporánea.

Lo anteriormente expresado no debe ser interpretado como que le hemos cerrado completamente a D.A.Co. la vía del desacato civil que le provee el Art. 13(e) antes citado. *El alcance de nuestra Opinión se limita a impedir que se utilice el referido Art. 13(e) para ordenar la reclusión, como medio coercitivo, con el fin de obligar a satisfacer a una parte una suma de dinero decretada por la Agencia, consecuencia la misma de una controversia de naturaleza estrictamente privada.*[13]

El mecanismo coercitivo de la vía del apremio personal que establece el mencionado Art. 13(e) de la Ley Núm. 5, puede, y debe, ser aplicado por los tribunales de instancia en aquellas situaciones relativas al poder de reglamentación de la Agencia, las cuales surgen de la enumeración de facultades y poderes que se hace en el Art. 6 de la citada Ley Orgánica del Departamento de Asuntos del Consumidor, ante, en que dicho organismo administrativo actúa bajo la jurisdicción primaria que le concede di-

---

[13] Lo expresado no constituye obstáculo para que si en la investigación o adjudicación de una querella de índole estrictamente privada, el D.A.Co. descubre y determina que existe una práctica cuyo impacto trasciende los intereses particulares de las partes, esto es, que afecta a otros consumidores, y que la misma es contraria a la política pública, la Agencia pueda utilizar el Art. 13(e) de la Ley Núm. 5, ante, para solicitar como remedio coercitivo la reclusión de la persona envuelta, atacando así la raíz del problema. En los casos en que el D.A.Co. estime que están presente las antes mencionadas circunstancias, dicha Agencia deberá presentar prueba al respecto, pudiendo entonces el foro judicial, de entenderlo procedente, ordenar el remedio excepcional de la reclusión. Véase, a modo de referencia, *Pierce v. Vision Investments, Inc.*, 779 F.2d 302, 309 (5to Cir. 1986).

cha ley en beneficio de la ciudadanía en general o de un gran sector de la misma. Esto es, situaciones tales como la reglamentación, fijación, control, congelación y revisión de los precios, márgenes de ganancias y tasas de rendimiento (3 L.P.R.A. sec. 341e(a)); la reglamentación y fiscalización de los anuncios y las prácticas engañosas en el comercio (3 L.P.R.A. sec. 341e(J)), etc. Como es sabido, en estas situaciones las resoluciones que emite el D.A.Co. contra los infractores de sus decretos o decisiones se circunscriben, de ordinario y desde un punto de vista monetario, a la imposición de multas. Aún en el supuesto de que se entendiera que la utilización del mecanismo del desacato civil contra el "infractor", por el no pago de la multa, constituye una "reclusión por deuda", dichas situaciones "tiene[n] un carácter tan acentuado de deber social", *Viajes Lesana, Inc. v. Saavedra*, ante, pág. 710, que las mismas son acreedoras a ser consideradas como una de las "contadas" excepciones a la prohibición constitucional en controversia.

En toda aquella otra situación —la cual, independientemente del hecho de que el D.A.Co. actúe en virtud de jurisdicción primaria o no, envuelva la dilucidación de una controversia entre dos (2) partes privadas que desemboca en el pago de una deuda monetaria por una parte a otra— *cabe señalar que, a pesar de que el mecanismo del desacato no podrá ser utilizado, el consumidor que acudió originalmente al D.A.Co. no quedará desprovisto de remedios.* En primer lugar, debe recordarse que el D.A.Co. está facultado para interponer, en representación del consumidor, cualquier remedio legal necesario para que se cumplan sus resoluciones, 3 L.P.R.A. sec. 341e(i), *por lo que es factible que D.A.Co. represente al consumidor en los mecanismos ordinarios tradicionales de ejecución de sentencia.* Por otro lado, el foro judicial, como parte de su poder inherente para reglamentar los procedimientos que se ventilan ante el mismo, está facultado para poner en

vigor y ordenar la ejecución, por la vía procesal ordinaria, de cualquier resolución del D.A.Co., así como implantar cualquier otro remedio que estime pertinente ante el incumplimiento de sus órdenes.

En conclusión, el citado Art. 13(e) de la ley habilitadora del Departamento de Asuntos del Consumidor, en tanto y en cuanto permite la encarcelación de aquel que no cumple con una resolución de la referida Agencia ordenándole a satisfacer una suma de dinero, producto la misma de la dilucidación por dicha Agencia de una controversia de índole estrictamente privada, es inconstitucional por contravenir las disposiciones del citado Art. II, Sec. 11 de la Constitución del Estado Libre Asociado que prohíbe el encarcelamiento por deuda en nuestra jurisdicción. Resolver lo contrario implicaría regresar a una filosofía medieval hace mucho tiempo superada por nuestra sociedad.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

Estoy conforme con los pronunciamientos normativos y doctrinales de las partes III y IV de la opinión del Tribunal, pero no estoy de acuerdo con algunos de los señalamientos en la parte V, particularmente en cuanto a la interpretación que se hace del alcance del apremio personal a la luz de lo dispuesto en la Sec. 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1.

No cabe duda de que en nuestro ordenamiento jurídico, como norma general, el encarcelamiento no se permite para vindicar intereses primordialmente privados. La pro-

hibición de prisión por deudas tiene rango constitucional desde 1952, y antes existía igualmente en virtud de lo dispuesto tanto en la Ley Orgánica Jones de 1917 como bajo el Art. 1811 del Código Civil, 31 L.P.R.A. sec. 5171. *Viajes Lesana, Inc. v. Saavedra*, 115 D.P.R. 703 (1984). Sin embargo, nuestra jurisprudencia ha reconocido desde hace mucho tiempo la validez del uso del desacato civil, bajo ciertas condiciones, en determinados casos en los que estaba presente el pago de deudas. Se ha permitido el apremio personal, por ejemplo, para provocar el cumplimiento de pensiones alimentarias. *Espinosa v. Ramírez, Alcaide de Cárcel*, 72 D.P.R. 901 (1951); *Sosa Rodríguez v. Rivas Sariego*, 105 D.P.R. 518 (1976). También se ha permitido en casos de deudores fugitivos, cuando el deudor ha tratado de defraudar a sus acreedores. *Ex Parte Carreras*, 39 D.P.R. 488 (1929).

El alcance preciso del desacato civil en estos casos fue intimado por este Tribunal en *Villa v. Corte*, 45 D.P.R. 879 (1933), y fijado de manera clara y expresa por voz del entonces Juez Asociado Señor Negrón Fernández en *Espinosa v. Ramírez, Alcaide de Cárcel*, supra. Se alude en esta jurisprudencia a casos donde la parte favorecida por una sentencia quedaría burlada en sus derechos por la inefectividad de los procedimientos ordinarios de ejecución. Se trata de situaciones en las que el deudor trata de declararse fraudulentamente insolvente, en las que el deudor oculta sus bienes o en las que, obstinadamente, evade el pago de la deuda teniendo medios para satisfacerla. En tales casos, procede acudir a las facultades inherentes de los tribunales para buscar un remedio adecuado como lo es el apremio personal. Como bien se indicó en *Espinosa v. Ramírez, Alcaide de Cárcel*, supra, pág. 906, "cuando el desacatador no ha intentado justificar su desobediencia a la orden que le impone el acto afirmativo que viene obligado a realizar y caprichosamente se niega a cumplir con ella, el tribunal tiene la facultad —y aún más, el deber—

de ofrecer a la parte que tiene derecho a la reparación, el medio coercitivo de que dispone para hacer cumplir sus propias órdenes".

En las situaciones aludidas coinciden dos (2) elementos esenciales. La parte requerida: (1) debe tener capacidad económica para cumplir con la orden judicial que le insta a pagar lo que debe, pero (2) obstinada y repetidamente incumple con su deber. La presencia de estos dos (2) elementos es de crucial importancia porque de ellos precisamente depende que pueda obviarse el mandato constitucional que prohíbe la prisión por deudas. El historial de la Sec. 11 del Art. II de la Constitución del Estado Libre Asociado, *supra*, claramente demuestra que el mal a evitarse es de privar a una persona de su libertad *por carecer de bienes materiales para responder de sus deudas*. Como bien se señala en el Informe Sobre la Carta de Derechos, nadie puede ser encarcelado *"por no tener recursos con que atender sus obligaciones económicas"*. (Énfasis suplido.) 4 Diario de Sesiones de la Convención Constituyente 2571 (1951). Si el deudor a quien se le requiere el pago tiene medios, no cae bajo el ámbito de la protección de la Sec. 1 del Art. II de nuestra Constitución, *supra*, sobre todo si se trata de un deudor que reiteradamente ha obviado el pago de la deuda, *Sosa Rodríguez v. Rivas Sariego*, supra, pág. 522, ya que en tales casos la prisión se decreta por la resistencia a la orden judicial, por la conducta obstinada, y no simplemente por haber dejado de pagar el dinero. *Villa v. Corte*, supra, págs. 890–891.

En el caso ante nos tenemos una situación que no cae bajo el mandato constitucional que prohíbe el encarcelamiento por deuda. El demandado fue ordenado a pagar lo que debía en numerosas ocasiones tanto por un dictamen del Departamento de Asuntos del Consumidor (D.A.Co.) como por varias sentencias y resoluciones judiciales. Por espacio de más de cinco (5) años estuvo evadiendo el pago, e incluso trató de acogerse a la protección de la Ley Fede-

ral de Quiebras, sin éxito. En ninguna de las varias vistas judiciales celebradas en este caso acreditó que carecía de medios para satisfacer la obligación. Aparentemente tenía recursos para atender su deuda pero no lo hizo por obstinación, desobedeciendo reiteradamente las órdenes judiciales. En tales casos procede el desacato civil, y no hay nada en el historial o el sentido propio de la Sec. 11 del Art. II de nuestra Constitución, *supra*, que lo impida.

Al formular el criterio que se expresa en esta opinión disidente hemos tenido muy en cuenta algunas de las deplorables realidades del creciente materialismo que aflige a nuestra sociedad. Con demasiada frecuencia se preconiza hoy día la conducta del individuo listo, que astutamente se desentiende de sus obligaciones. Con demasiada frecuencia se menosprecia una viejísima cualidad de las personas decentes que es la de pagar lo que deben cuando existen medios. La decisión de la mayoría en este caso tiene irremediablemente el efecto de permitir que se perpetúen estos males sociales. Con arreglo a ella, una persona acaudalada, que logre proteger su patrimonio con artimañas legales o de otra índole, puede burlarse impunemente de cumplir con el deber de pagar sus deudas, no importa cuán injusto ello sea. No cabe atribuir tal dislate a un supuesto mandato de nuestra Constitución, sobre todo cuando la única fuente directa que existe para interpretar la cláusula constitucional en cuestión, el Informe Sobre la Carta de Derechos, expresamente limita la prohibición del encarcelamiento por deudas a aquellos casos de personas que *no tienen recursos* para atender los mismos. La mayoría del Tribunal no toma en cuenta esto. Tampoco examina cabalmente el historial de la cláusula aludida, que tiene su origen indiscutible en la Ley Orgánica Jones legislada por el Congreso en 1917. Siguiendo bien conocidos preceptos de hermenéutica, la mayoría pudo haber examinado las fuentes pertinentes relativas a la norma originaria y así también precisar el alcance de la cláusula constitucional en

cuestión, pero tampoco lo hace. Esencialmente la mayoría se limita a repetir lo que ya se había dicho en *Viajes Lesana, Inc. v. Saavedra*, supra, sin aplicar a la situación de marras el tipo de análisis utilizado en esa decisión, que está enraizado en el extenso historial de la norma originaria.

En resumen, pues, respecto a la cuestión concreta ante la consideración del Tribunal no se siguen enteramente los métodos de análisis e interpretación que propiamente deben usarse cuando se examina un mandato literal de la Constitución, y por ello la mayoría termina negándose a reconocer la excepción a ese mandato planteada en este caso. En la nota al calce Núm. 13 de la opinión, sin embargo, la mayoría se apresura a reconocer otra excepción a lo que antes había calificado como el "terminante" mandato de la Sec. 11, Art. II de nuestra Constitución, *supra.* La no requerida admisión de esta nueva excepción es sorprendente no sólo por la manera algo sigilosa en que se hace y por la virtual ausencia de fundamentos propios que la justifique sino, además, porque antes en el texto de la opinión todos los señalamientos de la mayoría habían estado dirigidos precisamente a negar que hubiesen excepciones al mandato constitucional aludido, que no fuese la única que "al sol de hoy" había encontrado el Tribunal, la de las deudas alimenticias, que es distinta a la que apuradamente se reconoce en la nota al calce. Como consecuencia de estas y otras lagunas en su análisis del texto constitucional, la mayoría llega a un resultado que podría permitir incluso inmunizar jurídicamente conductas dolosas de sujetos taimados. Por todo ello, disiento.