# 99 DTA 124

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

WILFREDO COLON
Demandante-Apelante

v.

SUCESION DE GLORIA RODRIGUEZ H/N/C THE SMOKE SHOP, INC. Y STORKLAND COMPUESTA POR ISARDO E. BREVERMAN RODRIGUEZ Y JACKELINE ROSADO RODRIGUEZ
Demandados-Apelados

Núm. KLAN-97-00488

San Juan, Puerto Rico, a 19 de marzo de 1999

Panel integrado por su Presidenta, Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez Gierbolini

Fiol Matta, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El apelante, Sr. Wilfredo Colón, solicita que revoquemos la sentencia del Tribunal de Primera Instancia de 18 de marzo de 1997, notificada el 14 de abril del mismo año, que desestima una acción en cobro de dinero que él presentara contra la sucesión de la Sra. Gloria Rodríguez (Sucesión Rodríguez). El foro de instancia determinó que la señora Rodríguez había concluido ciertos contratos verbales con el señor Colón no en su carácter individual, sino en su capacidad como presidenta de varias corporaciones, por lo que correspondía a dichas corporaciones y no a la Sucesión Rodríguez el pago del dinero reclamado. Confirmamos.

### I

Veamos los hechos que tuvo ante su consideración el Tribunal de Primera Instancia, según surgen de la exposición estipulada de la prueba sometida por las partes. La señora Rodríguez contrató verbalmente al señor Colón para remodelar dos locales en el Mayagüez Mall. Dichos locales correspondían a los establecimientos conocidos como *"The Smoke Shop"* y *"Storkland"*, respectivamente. En cuanto a la remodelación de *"The Smoke Shop"*, el señor Colón hizo el trabajo eléctrico, el de plomería, las paredes, unas escaleras de acero, una oficina, unas tablillas de cristal y una fachada de cristal. Adelantados los trabajos en *"The Smoke Shop"*, la señora Rodríguez y el señor Colón acordaron verbalmente que por catorce mil trescientos dólares ($14,300.00) este último le haría el piso del otro local, el de *"Storkland"*. El señor Colón terminó el piso de *"Storkland"*.

Aunque los trabajos en *"The Smoke Shop"* estaban prácticamente finalizados, el señor Colón paralizó la obra tras recibir un pago mediante un cheque sin fondos que tuvo como consecuencia la devolución de ciertos cheques que él había emitido. El señor Colón reinició la obra cuando le reembolsaron este dinero. Según la exposición estipulada, al señor Colón se le deben treinta y dos mil seiscientos treinta y cinco dólares ($32,635.00) por su trabajo en el local de *"The Smoke Shop"*. También se le deben catorce mil trescientos dólares ($14,300.00) invertidos en su trabajo en el local de *"Storkland"*.

Según la exposición estipulada, el señor Colón declaró que la señora Rodríguez le hizo *"más o menos tres pagos"* para la remodelación de *"The Smoke Shop"*, uno de veinte mil dólares ($20,000.00) el 20 de diciembre de 1990, uno de diez mil dólares ($10,000.00) el 8 de enero de 1991 y otro de cinco mil dólares ($5,000.00) de 5 de febrero de 1991. Este último cheque fue el que causó problemas. Declaró que todos los cheques pertenecían a The Smoke Shop, Inc., pero al revisar nuevamente los cheques el señor Colón, notó que sólo decían *"The Smoke*

*Shop"*, sin el *"Inc."*. La cuantía del contrato verbal entre las partes se fue enmendando a medida que progresaba la construcción. Los pagos que se le hacían al señor Colón no se basaban en facturas, sino que la señora Rodríguez le hacia pagos parciales de las cantidades acordadas verbalmente.

El 15 de marzo de 1991, el señor Colón demandó a la señora Rodríguez h/n/c ■ The Smoke Shop, Inc. y *"Storkland"*, por motivo del dinero que se le quedó a deber por los trabajos en los dos locales mencionados. Tras la muerte de la señora Rodríguez, el señor Colón enmendó la demanda para sustituir a la demandada original por sus sucesores. La Sucesión Rodríguez está constituida por los hijos de la señora Rodríguez, el Sr. Isardo Braverman Rodríguez y la Sra. Jackeline Rosado Rodríguez.

El señor Colón declaró que el señor Braverman inicialmente participó en las conversaciones que dieron pie al contrato verbal, pero que no sabía que el señor Braverman fuera parte de una corporación con la señora Rodríguez.

La señora Rosado explicó que Storkland, Inc. y The Smoke Shop, Inc. son dos corporaciones separadas, con cuentas de banco y nóminas separadas y que están debidamente incorporadas en el Departamento de Estado. Declaró que los empleados de *"The Smoke Shop"* no eran empleados de su madre, la señora Rodríguez, sino de The Smoke Shop, Inc. Se admitieron en evidencia los certificados de incorporación de ambas compañías, dos resoluciones corporativas autorizando el arrendamiento de locales para *"The Smoke Shop"* y *"Storkland"* en el Mayagüez Mall y los contratos de arrendamientos a estos efectos, que estaban suscritos por la señora Rodríguez. La señora Rosado identificó cuatro cheques de The Smoke Shop, Inc. pagados al arquitecto José E. Ferrer, quien hizo los planos de construcción de ese negocio.

La señora Rosado identificó otras resoluciones corporativas admitidas en evidencia, las cuales autorizaban la apertura de tiendas *"The Smoke Shop"* en Plaza del Caribe, Plaza Las Américas, El Señorial Mall, el Cantón Mall y el Mayagüez Mall. Identificó, además, varias resoluciones corporativas autorizando a la señora Rodríguez a abrir y cerrar cuentas bancarias, girar cheques y tomar préstamos. Entre éstas, se encontraba una autorización para tomar un préstamo del Banco de Ponce, en el año 1985, a nombre de The Smoke Shop, Inc. La señora Rosado declaró que no tenía conocimiento sobre una resolución corporativa que autorizara particularmente contratar para la construcción de *"The Smoke Shop"* en el Mayagüez Mall.

La señora Rosado declaró que ella, su esposo y su madre, la señora Rodríguez, eran accionistas y oficiales de Storkland, Inc. Su madre era, además, la presidenta de dicha compañía. Al morir la señora Rodríguez se eligió una nueva Junta de Directores, de la cual la señora Rosado fue electa presidenta y su hermano tesorero. ■ La señora Rosado declaró que su madre, la señora Rodríguez era quien tomaba las decisiones corporativas y fue quien negoció con el señor Colón. The Smoke Shop, Inc. se vendió a Fun Time Corporation, mientras que Storkland, Inc. se acogió a la Ley de Quiebras.

Por último, surge claramente de la exposición estipulada que la parte demandada no presentó el testimonio del señor Braverman, aunque lo había anunciado como testigo. Sin embargo, lo puso a disposición de la parte demandante, aduciendo que su testimonio constituia prueba acumulativa.

El tribunal *a quo* encontró que ambos contratos verbales se realizaron entre el señor Colón y las dos corporaciones, The Smoke Shop, Inc. y Storkland, Inc. Así, decidió que la señora Rodríguez otorgó ambos contratos en su capacidad de funcionaria corporativa y no en su carácter individual. Por esa razón, fueron las corporaciones, como entes jurídicos con personalidad propia, y no la señora Rodríguez, las que se obligaron jurídicamente ante el señor Colón.

El señor Colón apeló ante nos, alegando que el tribunal de instancia erró en su apreciación y valorización de la

prueba. También aduce que el tribunal erró al no decretar que el testimonio no presentado del señor Braverman le hubiera sido adverso a la parte demandada.

## II

Sabido es que la parte que sostiene la afirmativa de una cuestión ante los tribunales tiene el *onus probandi* o peso de la prueba. Esto quiere decir que tiene el deber afirmativo de presentar evidencia y probar los extremos del hecho alegado. Véase, Regla 10(B) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10; véase, además, *Asoc. Auténtica Empl. v. Municipio de Bayamón,* 111 D.P.R. 199 (1981). En cuanto al asunto particular que nos concierne en este caso, el Artículo 1168 del Código Civil, 31 L.P.R.A. 3261, dispone que *"[i]ncumbe la prueba de las obligaciones al que reclama su cumplimiento[... ]".*

En el ámbito particular del derecho corporativo, corresponde a quien propone imponerle responsabilidad personal a los accionistas de una corporación presentar *"prueba fuerte y robusta"* ■ que establezca que no existe separación entre la corporación y el accionista y que los hechos son tales que reconocer dicha personalidad jurídica equivaldría a: *"sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen".* Srio. *D.A.C.O. v. Comunidad San José, Inc.,* 130 D.P.R. 782, 798 (1992).

Dicho estándar de *"prueba fuerte y robusta"* constituye un criterio de prueba intermedio mas riguroso que el estándar de preponderancia de la evidencia pero inferior al de *"más allá de toda duda razonable"* que es aplicable en casos penales. Véase, *P.P.D. v. Admor. General de Elecciones,* 111 D.P.R. 199, 224 (1987). Del expediente y la exposición narrativa tan sólo surgen meras alegaciones del señor Colón a los efectos que la señora Rodríguez fue la verdadera parte contratante. Por otro lado, observamos que la Sucesión Rodríguez sometió su prueba documental y testifical tendente a establecer que la señora Rodríguez, actuó en carácter de presidenta corporativa. El señor Colón no satisfizo este estándar de prueba necesario para probar confusión entre las entidades jurídicas y sus accionistas.

En cuanto a la decisión de la Sucesión Rodríguez de no presentar el testimonio del señor Braverman, resolvemos que no erró el tribunal al no considerarlo como testimonio que sería adverso a la parte demandada. Basta señalar que esta presunción de adversidad no se activa cuando la parte que no presentó al testigo lo pone a disposición de la parte oponente y ese testimonio de todos modos hubiese sido acumulativo. Véase, *Pueblo v. Ramos Santos,* 132 D.P.R. ___ (1992), **92 J.T.S. 176,** a la pág. 10261; *Granados v. Rodríguez Estrada V,* 127 D. P.R. 1, a la pág. 28. Véase, además, Regla 19(e) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 19.

Por todo lo anterior, se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 124

1. H/N/C = *"Haciendo negocios como".*

2. La exposición narrativa no especifica para cuál de las dos corporaciones fue que se eligió la nueva Junta de Directores, o si de hecho se eligieron nuevas Juntas para ambas.

3. *González v. San Just Corp.,* 101 D.P.R. 168, 172 (1973).