ERNESTO AGOSTINI PASCUAL ET AL., demandantes y recurridos, *v.* IGLESIA CATÓLICA, APOSTÓLICA Y ROMANA DE PUERTO RICO ET AL., demandados y peticionarios.

*Número:* O-79-351    *Resuelto:* 25 de octubre de 1979

*Miguel Ramón Aguiló*, abogado de los peticionarios; *Víctor E. Báez*, abogado de los recurridos; *Martínez Álvarez, Fernández Paoli, Menéndez Monroig, Menéndez Cortada & Lefranc Romero*, abogados de la Iglesia Católica, Apostólica y Romana de Puerto Rico y de su Eminencia Excelentísima Luis Cardenal Aponte Martínez.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Tras el estudio del funcionamiento de la Escuela Superior de San Antonio de Guayama, una institución parroquial sujeta a la jurisdicción de la Diócesis de Ponce de la Iglesia Católica, Apostólica y Romana, el Obispo ordenó su cierre. La decisión se notificó a los padres de los alumnos con varios meses de anticipación.

Un grupo de padres interpuso recurso de apelación a Roma por conducto del Delegado Apostólico para Puerto Rico y Nuncio de Santo Domingo y le remitió un cablegrama al Sumo Pontífice. La Sagrada Congregación para la Educación Católica, parte de la Curia Romana, aceptó revisar la petición.

Poco más tarde los padres concernidos presentaron una demanda ante el Tribunal Superior en que alegaban la inexistencia de justa causa para la acción tomada por las autoridades eclesiásticas, solicitaban daños, la sindicatura de la escuela afectada y la emisión de un interdicto para impedir su cierre.

La Iglesia impugnó la jurisdicción del tribunal. Señaló que la supervisión general de la educación en sus escuelas compete a la Sagrada Congregación para la Enseñanza Católica; que los señores obispos poseen facultad para cerrar escuelas; que la decisión eclesiástica impugnada se debió a la determinación de que la Escuela Superior San Antonio no cumplía con los estándares de catolicidad genuina y excelencia académica requeridos por la Conferencia Episcopal Puertorriqueña; que la matrícula en el referido plantel se efectuaba

por el período de un año escolar y nunca por cuatro años o por tiempo indefinido; y que la escuela pública estaba en condiciones de absorber a los estudiantes que interesaban ingresar en ella. Se acompañaron declaraciones juradas y otra documentación sobre estos extremos.

Celebrada una vista, el tribunal expidió una orden de entredicho provisional para que la Iglesia Católica se abstenga de mantener cerrada la Escuela Superior San Antonio. El 20 de julio de 1979 ordenamos la paralización de los procedimientos en el Tribunal Superior hasta la resolución del recurso presente. Tres semanas después de radicarse este recurso, la Sagrada Congregación para la Enseñanza Católica confirmó la decisión del Señor Obispo de Ponce.

■ El Art. II, Sec. 3 de la Constitución del Estado Libre Asociado de Puerto Rico dispone:

"No se aprobará ley alguna relativa al establecimiento de cualquier religión ni se prohibirá el libre ejercicio del culto religioso. Habrá completa separación de la iglesia y el estado."

La primera oración incluye dos cláusulas familiares de la primera enmienda de la Constitución de Estados Unidos: la referente a la libertad de culto y la que prohíbe el establecimiento de una religión oficial. La tercera disposición guarda estrechos vínculos con las otras dos y, aunque es nueva en su forma, tiene una larga historia. Esta tercera cláusula refleja fundamentalmente la teoría de Madison de que la relación ideal entre el Estado y la Iglesia exige el reconocimiento de dos esferas de acción separadas. L. H. Tribe, *American Constitutional Law*, Mineola, N.Y., the Foundation Press, 1978, pág. 819.

Las tres cláusulas referidas de nuestra Constitución se expresan en términos absolutos, como ocurre a menudo en las constituciones, entre ellas la estadounidense. Los choques entre los principios, absolutos o no, son frecuentes en el derecho constitucional, sin embargo, por lo que es inescapable en ocasiones identificar el valor preeminente. La existencia

de este género de conflictos ha sido reconocida por este Tribunal. *Sucn. de Victoria* v. *Iglesia Pentecostal*, 102 D.P.R. 20, 25 (1974).

Las llamadas cláusulas religiosas han generado gran número de doctrinas para atender la amplia gama de controversias que han suscitado. Fink, *The Establishment Clause According to the Supreme Court: the Mysterious Eclipse of Free Exercise Values*, 27 Catholic U.L. Rev. 207 (1978); Chenoweth & Olivieri, *A Survey of Selected Contemporary Church-State Problems*, 51 Notre Dame Law. 737 (1976). Por tal razón es imprescindible definir con la máxima precisión posible la cuestión planteada en cada uno de estos casos para mantener firmemente atados al género concernido de disputa los principios que se utilicen para su solución.

No se ataca en este pleito acción alguna del Estado en supuesta violación de la libertad de culto o de la cláusula que prohíbe el establecimiento oficial de una religión. Lo que se desea es que se utilice el poder del Estado para revisar la decisión de las autoridades eclesiásticas sobre si determinada escuela cumple con el requisito de catolicidad genuina impuesto, en adición a otros, por la Conferencia Episcopal Puertorriqueña. No resulta en este caso que la Iglesia incumplió sus propias reglas al tomar la decisión impugnada [1] o que ésta es fraudulenta o arbitraria[2] o que es necesario adjudicar la pertenencia de bienes.[3] Tampoco existe obligación afirmativa que impongan las leyes del país de establecer o mantener escuelas parroquiales. Ya que las normas en estos litigios a veces varían según la clasificación jurídica de la asociación debe recordarse también que la Iglesia Católica, Apostólica y Romana es una entidad jerárquica y episcopal.[4]

---

[1] Véase: *Bouldin* v. *Alexander*, 82 U.S. 131 (1872).

[2] Véase: *González* v. *Roman Catholic Archbishop of Manila*, 280 U.S. 1 (1929).

[3] Consúltense: *Kedroff* v. *St. Nicholas Cathedral of Russian O. Ch.*, 344 U.S. 94 (1952), y *Watson* v. *Jones*, 80 U.S. 679 (1871). No hacemos pronunciamiento alguno sobre la posición de este Tribunal respecto al problema envuelto en estos casos o sobre *González* y *Bouldin*.

[4] Para el significado y efecto de esta y otras clasificaciones, véase: *Watson,*

La cuestión básica a resolver es si el poder judicial del Estado debe revisar en las circunstancias descritas la acción eclesiástica impugnada. Si se adopta una interpretación absolutista de la cláusula de separación del Estado y la Iglesia, la contestación es evidente, mas ya hemos señalado que tal interpretación es inexacta. Las zonas de acción de estos dos poderes suelen entremezclarse. Muchos actos del Estado pueden repercutir en la otra zona, pero ello no entraña su nulidad si se justifican en términos seculares. Tribe, *op. cit.*, secs. 14-8 y 14-9. Lo verdaderamente determinante en este caso, en consecuencia, es si existe un interés secular de suficiente peso para permitir la intervención del poder judicial.

La contestación es que no. La involucración del Estado en la controversia presente atentaría contra el corazón mismo de la doctrina de la separación entre la Iglesia y el Estado. La determinación de si la Escuela Superior San Antonio cumple con el requisito de catolicidad genuina es una cuestión esencialmente de fe. Cuando las iglesias no han resuelto una materia de esta índole en forma claramente arbitraria, ilegal o indebidamente opresiva a otros miembros de su cofradía, el Estado debe abstenerse totalmente de interferir con la decisión eclesiástica. No es función del Estado en estas controversias dictar doctrina religiosa. ([5])

La decisión tomada en este litigio fue producto de

722–727; Note, *Limits on Judicial Review of Hierarchical Church Decisions*, 45 Fordham L. Rev. 992, 994 *et seq.* (1977); Note, *The Role of Civil Courts in Church Disputes*, 1977 Wis. L. Rev. 904, 908–09.

([5]) El Tribunal Supremo de Estados Unidos ha enunciado una doctrina análoga en varios casos. Véanse: *Presbyterian Church* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440 (1969); *Serbian Eastern Orthodox Diocese* v. *Milivojevich*, 426 U.S. 696 (1976). *Serbian* y sus antecedentes han sido severamente criticados por postular una deferencia exageradamente amplia hacia los tribunales eclesiásticos. Tribe, *op. cit.*, 884–885; Comment, "*Serbian Eastern Orthodox Diocese* v. *Milivojevich: the Continuing Crusade for Separation of Church and State*", 18 Wm. & Mary L. Rev. 655 (1977). La crítica se extiende a *National Labor Relations Board* v. *The Catholic Bishop of Chicago*, 440 U.S. 490 (1979), *Cf. Surinach* v. *Pesquera de Busquets*, 604 F.2d 73 (1st Cir. 1979).

cuidadosa deliberación y se fundó escrupulosamente en textos establecidos de derecho eclesiástico. La Carta Pastoral sobre la Educación en las Escuelas Católicas de Puerto Rico, adoptada por la Conferencia Episcopal de Puerto Rico el 30 de marzo de 1976, ([6]) dispone que "La escuela católica debe caracterizarse por dos notas esenciales: *excelencia académica y catolicidad genuina*". (Párrafo 41, énfasis en el original; véase también el apartado 46B.) Es incuestionable que la decisión de cerrar la escuela le competía al Obispo de la Diócesis de Ponce. *Código de Derecho Canónico*, Biblioteca de Autores Cristianos, Madrid, 1962, c. 335. De la decisión de un obispo sobre asuntos relativos a la enseñanza se apela al dicasterio de la Curia Romana denominado la Sagrada Congregación para la Enseñanza Católica. La Curia Romana es el conjunto de órganos (Sagradas Congregaciones, Tribunales y Oficios) por los cuales el Sumo Pontífice ejerce el gobierno de la Iglesia. C. 242; F. Della Rocca, *Manual de Derecho Canónico*, Madrid, Ed. Guadarrama, 1962, Vol. I, pág. 264 *et seq*. No puede tratarse ningún asunto por las Congregaciones y otros dicasterios sin previa notificación al Romano Pontífice. C. 244, párr. 1. Con ciertas excepciones que no vienen al caso, las resoluciones de las Congregaciones necesitan la aprobación pontificia. C. 244, párr. 2.

La Sagrada Congregación para la Enseñanza Católica es el nuevo nombre conferido a la antigua Sagrada Congregación de Seminarios y Universidades al reorganizarse la Curia Romana, efectivo el 1 de enero de 1968. *Constitución Apostólica Regimini Ecclesiae Universae*, Colombia, Tip. Hijas de San Pablo, 1967, párr. 75. La resolución de la Sagrada Congregación para la Enseñanza Católica en este caso es hoy firme e inapelable. Della Rocca, *op. cit.*, Vol. I, pág. 267.

■ No hallamos tampoco base para cuestionar la acción tomada por razón de intereses imperiosos del Estado, opresión indebida de otros fieles y razones análogas. Es cierto que el

---

([6])Se reprodujo separadamente, sin pie de imprenta.

cierre de una escuela privada, aun con amplio aviso, les puede causar inconveniencias a diversos sectores de la comunidad, pero los graves peligros que entraña la irrupción del Estado en asuntos doctrinales inclinan pesadamente la balanza a favor de la no intervención.

*En consideración a lo expuesto se expedirá el auto solicitado, se dictará sentencia para revocar la orden recurrida y se dejará sin efecto el interdicto dictado.*

El Juez Asociado Señor Negrón García no intervino.