# 97 DTA 168

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN
## PANEL SUSTITUTO

LCDA. IDA CARDONA DE ORENSTEIN
Demandante-Recurrida

v.

HON. RAFAEL HERNANDEZ COLON, GOBERNADOR;
HON. JORGE PEREZ DIAZ, SRIO. DE JUSTICIA
Demandados-Peticionarios

Núm. KLCE-97-00606

San Juan, Puerto Rico, a 12 de agosto de 1997

Panel integrado por su Presidente, Juez Miranda De Hostos
y los Jueces Córdova Arone y Salas Soler

Miranda De Hostos, Juez Ponente

██ 

## TEXTO COMPLETO DE LA SENTENCIA

Se recurre de una sentencia parcial del Tribunal de Primera Instancia, Sala Superior de San Juan, que dictaminó que los peticionarios·el Gobernador de Puerto Rico, *et al.,* le impidieron a la recurrida Ida Cardona de Orenstein, el. libre ejercicio de su culto religioso, en violación a sus· derechos constitucionales, al destituirla de su puesto de Fiscal Especial General I, por razón de negarse a rendir labores los domingos en el Centro Metropolitano de Investigaciones y Denuncias (CMID).

Por no estar conforme con dicho dictamen, los peticionarios acuden ante nos alegando la comisión de tres errores: primero, que erró el foro recurrido al autorizar una enmienda a la demanda para incluir como demandantes adicionales al esposo de la recurrida y a la sociedad legal de gananciales compuesta por ambos; segundo, que erró al resolver que la destitución de la recurrida violó su derecho a no ser privada de su empleo sin las garantías del debido procedimiento de ley, por no celebrársele una vista formal antes de destituirla; y tercero, que erró al concluir como cuestión de derecho, que no se demostró un interés apremiante que justificara exigirle a la recurrida que trabajara el día domingo mientras estuvo asignada al CMID.

Atendido el recurso y la contestación a la orden de mostrar causa, donde la parte recurrida da por sometido el recurso, se expide el auto solicitado y se revoca la sentencia parcial emitida, por los siguientes fundamentos.

## I

Los hechos que dan lugar al presente recurso, según fueron estipulados por las partes son los siguientes.

La recurrida Ida Cardona de Orenstein, desempeñó el puesto de Fiscal Especial General desde el 17 de noviembre de 1988 hasta el 14 de agosto de 1992, fecha en que fue destituida por el entonces Gobernador de Puerto Rico, Hon. Rafael Hernández Colón. Para los años de 1989-1991, la recurrida estuvo asignada a la Oficina Central de la División de Investigaciones y Procesamiento Criminal del Departamento de Justicia y desde el 15 de diciembre de 1989 fue designada Directora de la Unidad de Asesoramiento, Planificación y Programación de Justicia Criminal de la referida División.

Con el propósito de adquirir nuevos conocimientos en el área investigativa, la recurrida le solicitó al entonces Secretario de Justicia, Hon. Jorge Pérez Díaz, que la trasladara al CMID. Para el 12 de noviembre de 1991, el Secretario de Justicia le notificó por escrito a la recurrida, que efectivo el 10 de diciembre de 1991, se integraría al grupo de fiscales del CMID bajo la supervisión de la Fiscal Iris Meléndez Vega.

Surge de los hechos estipulados que la recurrida, al darse cuenta de que la fecha de su traslado era domingo, le escribió una carta al Secretario de Justicia el 18 de noviembre de 1991, solicitando que su traslado se pospusiera para el lunes 2 de diciembre. Le indicaba en la misma, que ella no realizaba trabajo secular los domingos, pues profesaba la religión católica, donde se desempeñaba como Ministro de la Eucaristía y lectora.

El Secretario de Justicia, el 26 de noviembre de ese mismo año, le contestó por escrito a la recurrida, que no podía acceder a su solicitud de exención de trabajo los domingos en el CMID. Se

Justicia no había aprobado un reglamento para regir sus procedimientos administrativos; y que el Oficial Examinador no podía presidir la vista porque era empleado de la misma agencia que le había formulado los cargos. El Oficial Examinador declaró sin lugar la impugnación del proceso presentada por la recurrida.

Finalmente, el 19 de mayo de 1992 se celebró la vista administrativa y el 4 de junio de 1992, el Oficial Examinador rindió su informe. En el mismo se concluyó que el procedimiento administrativo había cumplido con todas las garantías del debido proceso de ley y que la vista informal previa al despido a la cual la recurrida tenía derecho, sólo requería que se le brindara la oportunidad para presentar su versión de lo sucedido.

Luego de un análisis de los planteamientos sobre alegada violación al derecho constitucional sobre el libre ejercicio de la religión, el Oficial Examinador recomendó que la recurrida fuera destituida de su cargo. Se fundamentó que en el balance de intereses, el interés del Estado en mantener continuidad en las operaciones del CMID como parte de la lucha anticrimen, de los cuales los fiscales como funcionarios públicos eran de vital importancia, debía prevalecer sobre el derecho de la recurrida a practicar la religión de su preferencia.

El Secretario de Justicia acogió la recomendación del Oficial Examinador y a su vez recomendó al Gobernador la destitución de la recurrida. En virtud de dichas recomendaciones, el entonces Gobernador Hon. Rafael Hernández Colón, destituyó a la recurrida efectivo al 14 de agosto de 1992. En dicha comunicación, el Gobernador la instruyó de su derecho a acudir en apelación a la Junta de Apelaciones del Sistema de Administración de Personal y del plazo que disponía para tales fines. Inconforme con la determinación el 31 de agosto de 1992, la recurrida presentó una solicitud de reconsideración a la oficina del Gobernador. El primer mandatario reiteró su decisión mediante carta del 6 de octubre de 1992.

La recurrida radicó una demanda el 14 de septiembre de 1993 en el Tribunal de Primera Instancia contra el Gobernador de Puerto Rico y el Secretario de Justicia, alegando en síntesis, que su destitución fue ilegal y contraria a la constitución. Los funcionarios demandados radicaron una solicitud de sentencia sumaria, donde presentaron la defensa de falta de agotamiento de remedios administrativos por parte de la recurrida. El foro de instancia acogió favorablemente dicha posición y dictó sentencia sumaria desestimando la demanda. La recurrida acudió en apelación al Tribunal Supremo y el alto foro revocó la sentencia desestimatoria de instancia y devolvió el caso para la celebración de una vista.

Estando el caso en el tribunal de instancia, la recurrida solicitó autorización para enmendar la demanda a los fines de que tanto su esposo, como la sociedad legal de gananciales integrada por ambos, figuraran como demandantes. El foro recurrido autorizó la enmienda y le concedió un término a las partes, para que presentaran estipulaciones de hechos y actualizaran los memorandos de derecho que obraban en los autos.

Presentadas las estipulaciones de hechos y por ser una controversia de derecho, según acordaron las partes, el foro recurrido dictó sentencia parcial el 19 de mayo de 1997, declarando con lugar la demanda al resolver que conforme al Religious Freedom Restoration Act of 1993, 42 U.S.C. 2002bb, *et. seq.,* (RFRA) y la Constitución del Estado Libre Asociado de Puerto Rico, se le violaron los derechos a la recurrida a la liberad de culto al ser destituida.

De dicho dictamen, el Procurador General acude ante nos.

## II

Considerando que las partes dieron por sometido el recurso ante nos por sus escritos, incluyendo la contestación a la orden de mostrar causa a la recurrida y por haberse estipulado los hechos y ser una controversia de derecho, nos encontramos en igual posición que el foro de instancia para evaluar la prueba presentada y adjudicar la controversia. *Cruz v. Sierra,* opinión de 30 de junio de 1993, **93 J.T.S. 109**, pág. 10922.

-A-

Debemos comenzar con exponer que la sentencia recurrida dictada por el tribunal de instancia el 19 de mayo de 1997, se fundamenta principalmente en el RFRA y la Constitución del Estado Libre Asociado de Puerto Rico; no obstante, a seis (6) días de ser emitida, en el caso *City of Boerne v. P.F. Flores*, 65 U.S.L.W. 4612 (1997), el Tribunal Supremo de Estados Unidos declaró dicho estatuto inconstitucional. Resolvió que el análisis constitucional que requería la ley, constituia una interferencia congresional indebida en las funciones de la rama judicial, en violación a los principios de separación de poderes.

Dicho estatuto establecía como análisis constitucional, que cualquier interferencia sustancial con el ejercicio de la religión de una persona, garantizado por la Primera Enmienda de la Constitución de Estados Unidos, sería válida si el Estado demostraba que la ley o reglamentación tenía un interés apremiante, que era neutral y de aplicación general. Bajo dicha ley recaía en el Estado el peso de la prueba para demostrar el interés apremiante de la ley o reglamentación.

El Tribunal Supremo de Estados Unidos había resuelto previamente, que cuando el Estado mediante una ley o reglamento promueve algún fin legítimo gubernamental que afecta adversamente la práctica de una religión, la garantía constitucional requiere bajo un análisis de balances de intereses, que en algunas situaciones se hagan concesiones, para que se permita el ejercicio libre del culto religioso. *Sherbert v. Verner*, 374 US 398, 404 (1963).

No obstante, no toda reglamentación requiere de tal acomodo, en particular cuando la acción gubernamental sobre la práctica es incidental y el Estado tiene un interés legítimo y apremiante que justifique su acción. Si la acción gubernamental es neutral, de aplicación general y de estricto contenido secular que recae uniformemente sobre todo género de actividad, dicha reglamentación no tiene que estar justificada por un interés apremiante del Estado, si sólo tiene un efecto incidental sobre una práctica religiosa. En estos casos, contrario a lo que disponía la RFRA, el que alega la violación constitucional tiene el peso de la prueba para demostrar que la reglamentación le viola sus derechos a la libertad de culto. *Employment Division v. Smith*, 494 US 872, 883-889 (1990).

Por lo tanto, una vez declarado inconstitucional el RFRA por el Tribunal Supremo de Estados Unidos por ser contrario a los principios de separación de poderes, el análisis constitucional en el presente caso es el esbozado en *Employment Division v. Smith, supra*, bajo el balance de interés. Ante las circunstancias mencionadas, concluimos que no procede el utilizar en la presente controversia el análisis constitucional de escrutinio estricto dispuesto por RFRA.

**-B-**

Una vez resuelto que no procede el utilizar el análisis de escrutinio estricto en el presente caso, analicemos los hechos estipulados a la luz de las normas constitucionales y la jurisprudencia aplicable, según lo someten las partes ante nuestra atención.

El Art. II, Sec. 3 de la Constitución del Estado Libre Asociado de Puerto Rico expresa que, *"[N]o se aprobará ley alguna relativa al establecimiento de cualquier religión ni se prohibirá el libre ejercicio del culto religioso. Habrá completa separación de la iglesia y el estado."* En dicho artículo se consagra la libertad de culto reconociéndose la teoría constitucional de los Estados Unidos, de que existen dos esferas de acción separadas entre el estado y la religión. *Agostini Pascual v. Iglesia Católica*, 109 D.P.R. 172, 177 (1979); *Jones v. Wolf*, 433 US 595, 602 (1979).

Esta norma constitucional responde a la necesidad de garantizar que ninguna de estas esferas de influencia, interfieran o menoscaben sus derechos y prerrogativas entre sí, quedando claro que al Estado, a través de los tribunales, no le corresponde interferir con las materias de índole religiosa. *Díaz v. Colegio Nuestra Sra. del Pilar*, 123 D.P.R. 765, 783 (1989).

Aunque tales principios prohiben que el Estado promueva legislación o reglamentación que afecte adversamente la práctica de una religión, en algunas situaciones la acción gubernamental ha reconocido que *"[s]i el efecto adverso de la acción gubernamental sobre la **práctica religiosa es incidental y el Estado tiene un interés legítimo y apremiante que justifique su acción, prevalece la acción gubernamental en tales circunstancias."*** *Asociación de Academias v. E.L.A.*, opinión de 22 de febrero de 1994, **94 J.T.S. 16,** pág. 11518; *Employment Division v. Smith, supra*. (Enfasis suplido.)

En las situaciones en que la acción gubernamental es neutral, lo cual se ha definido, como una reglamentación de actividades seculares que recae uniformemente sobre todo un género de actividades, dicha reglamentación ni siquiera tiene que estar justificada por un interés apremiante del Estado, si sólo tiene un efecto incidental sobre una práctica religiosa. *Díaz v. Colegio Nuestra Sra. del Pilar, supra,* págs. 778-779.

Los precedentes antes mencionados expresan, inclusive, que cuando la reglamentación es mínima o incidental, le corresponde al que alega la violación a su libertad de culto demostrar concretamente cómo es que dicha reglamentación viola sustancialmente el libre ejercicio de su religión. En ausencia de esta prueba inicial, se hace innecesario el proseguir evaluando la ley o reglamentación bajo un análisis de balances de intereses. *Asociación de Academias v. E.L.A., supra,* pág. 11518. (Casos citados.)

# III
Acorde a los principios enumerados, analicemos los hechos particulares en el presente caso.

Es un hecho incuestionable, y así lo reconoce el tribunal de instancia, que las funciones de los fiscales en nuestra jurisdicción tienen suma importancia y gozan de un gran interés público, como funcionarios destinados a combatir la criminalidad y salvaguardar los derechos constitucionales.

La responsabilidad de investigar los casos criminales para determinar si hubo conducta delictiva, es una de las áreas más importantes de las funciones de los fiscales y de la justicia criminal. Entre las funciones del ministerio público se encuentran: la investigación dentro del plazo de tiempo más corto posible desde la ocurrencia de la conducta delictiva y la presentación de cargos; la preparación profesional para defender las causas en los tribunales incluyendo entrevistas de testigos y peritos; el acopio y análisis de prueba documental; el proveer el adiestramiento sobre investigación a otros funcionarios relacionados con la justicia criminal; y el cumplir dentro de las normas éticas y legales con la política pública del Estado contra la criminalidad.

La política pública del Departamento de Justicia para ese momento --al igual que al presente-- estaba dirigida a que los fiscales se desempeñaran efectivamente y estuviesen disponibles en todo momento durante el horario de turnos asignado. Orden Administrativa Núm. 85-10 de 11 de diciembre de 1985.

Sobre este particular y sobre la reglamentación cuestionada cabe el destacar que la unidad de investigaciones conocida como CMID se creó mediante Orden Administrativa Núm. 87-12 del 30 de noviembre de 1987, por el Departamento de Justicia, con el propósito de utilizar adecuadamente los recursos disponibles para combatir la criminalidad. Dicha unidad de investigaciones, para cumplir con las labores y servicios que ofrece, trabaja de manera ininterrumpida las veinticuatro (24) horas, los siete (7) días de la semana, todo el año.

De esta manera se intenta lograr que los fiscales estén disponibles inmediatamente que surja la situación, de manera que se realicen las investigaciones correspondientes sin dilaciones. Una vez realizada la investigación y levantado el expediente, entonces se procede a presentar los cargos ante los jueces, en las salas de investigaciones del tribunal. Los fiscales asignados a dicha unidad de investigaciones tienen que cumplir con un plan de trabajo por turnos, el cual la prueba presentada establece de forma incontrovertible, que es aplicable de manera general y uniforme a todos. El propósito e interés público del Estado en cuanto a la necesidad del CMID para beneficio de la justicia criminal y la ciudadanía en general es claro, por lo cual su poder de reglamentación es incuestionable; en particular, sobre su necesidad de proveer servicio de manera ininterrumpida veinticuatro (24) horas, los siete (7) días de la semana, todo el año.

La recurrida alega que esta reglamentación le es adversa y le impide el ejercicio de su derecho constitucional a la libertad de culto, pues le priva de acudir los domingos para cumplir el precepto según dispuesto por la religión Católica y aún más a ella, por ser Ministro Extraordinario de la Eucaristía y lectora.

Siguiendo el análisis constitucional requerido, según ha sido avalado por nuestro más alto foro, no le asiste la razón a la parte recurrida.

La reglamentación del CMID sobre las horas de operación de veinticuatro (24) horas, los siete (7) días a la semana, de forma ininterrumpida, todo el año, sostienen un fin legítimo y apremiante del Estado de proveer servicios en la esfera de la investigación criminal como antes señalamos. Por otra parte, esta es una reglamentación de naturaleza neutral y le aplica de forma general a todos los funcionarios del ministerio público adscritos a dicha unidad investigativa. Dicha reglamentación es incidental y mínima sobre la práctica religiosa, pues no va dirigida en particular a que se trabaje los domingos y en específico durante las horas que se ofician los servicios religiosos a los cuales asiste la recurrida.

En ausencia de prueba por la parte recurrida que demuestre concretamente como lo requiere la jurisprudencia, que el Estado, mediante la reglamentación del CMID, le privó de su derecho a la libertad de culto, al imponerle un gravamen sustancial al ejercicio de su religión, debemos concluir que bajo el análisis constitucional vigente y dadas las circunstancias del presente caso, no existe la violación constitucional señalada.

## IV

Por último, el Estado le concedió varias instancias a la recurrida para que cumpliera con las responsabilidades de su cargo, inclusive varias reuniones con su supervisora, el Secretario de Justicia y comunicaciones con el Gobernador de Puerto Rico. No obstante, la realidad que surge de los autos es que contrario a lo que le fue ordenado en varias ocasiones y durante varios meses, ésta se ausentó de sus funciones trece (13) domingos, por un período de ocho (8) meses, afectando la reglamentación del CMID que persigue como antes señalamos, un interés público legítimo.

Concluimos que las propias actuaciones de la recurrida dieron motivo a que el entonces Gobernador, Hon. Rafael Hernández Colón, en el descargo de sus responsabilidades y luego de agotar todos los medios posibles, se viera forzado a ordenar su destitución por insubordinación y abandono del servicio público, luego de la formulación de cargos, de concederle una vista informal y de probarse los mismos.

## V

Por los fundamentos que anteceden, se expide el auto de *certiorari*, se revoca la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan y se desestima la demanda presentada por la recurrida, por concluir que el despido ordenado fue conforme a las normas constitucionales vigentes.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General