ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| GEORGE PHILLIP RIVERA GONZÁLEZ; JORGE ANTONIO VÉLEZ FLORES<br><br>Parte Apelante<br><br><br>v.<br><br><br><br>ASOCIACIÓN DE RESIDENTES HACIENDA CAMBALACHE II Y III INC. Y OTROS<br><br>Parte Apelada | KLAN202500400 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Sala: 401<br><br>Caso Núm.: CN2024CV00272<br><br>Sobre: Interdicto (Injunction Preliminar y Permanente); Daño y Perjuicios |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2025.

Compareció ante este Tribunal la parte apelante, el Sr. Jorge Antonio Vélez Flores (en adelante, el "señor Vélez Flores" o "Apelante"), mediante recurso de apelación presentado el 7 de mayo de 2025. Nos solicitó la revocación de la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, el "TPI"), el 19 de marzo de 2025. Dicho dictamen fue objeto de una "**Solicitud de Reconsideración en Torno a Sentencia Parcial [104] del 19 de marzo de 2025**" (en adelante, "Moción de Reconsideración") interpuesta por el Apelante, la cual fue declarada "No Ha Lugar" el 7 de abril de 2025.

Por los fundamentos que expondremos a continuación, se *confirma* en parte y se *revoca* en parte la *Sentencia Parcial* apelada.

**I.**

El caso de epígrafe tuvo su inicio el 7 de junio de 2024, con la presentación de una "**Demanda**" por parte del Sr. George Phillip Rivera González (en adelante, el "señor Rivera González") y el señor Vélez Flores en contra de la Asociación de Residentes Hacienda Cambalache II y III (en adelante, "Asociación de

Número Identificador:
SEN2025_____

Residentes"), el Sr. Mike Perales López (en adelante, el "señor Perales López"), la Sra. Jacilia Morales (en adelante, la "señora Morales"), la Sra. Rosa López Quiñones (en adelante, "López Quiñones"), sus cónyuges y respectivas sociedades legales de bienes gananciales y otros codemandados de nombres desconocidos (en adelante y en conjunto, "los Apelados") sobre *injunction* preliminar y permanente y daños y perjuicios. Mediante la misma, expresaron que son dueños de ciertas fincas enclavadas y colindantes con la Urbanización Hacienda Cambalache, las cuales se encuentran inscritas en el Registro de la Propiedad en la Sección III de Carolina. Señalaron que, conforme a determinada certificación, el Municipio de Canóvanas autorizó la aceptación de la donación de varias fajas de terrenos ubicadas en el Barrio Cambalache para que fueran dedicadas al uso público. Especificaron que dichos solares fueron identificados como Calle A y Calle Lukeliz de la Hacienda Cambalache.

De igual modo, indicaron que las referidas calles son vías públicas que le dan acceso a sus fincas, siendo la Calle Lukeliz la vía principal de entrada. Argumentaron que varios residentes instalaron unilateralmente un portón eléctrico al inicio de esta última vía de rodaje, estableciendo así, un sistema de control de acceso. Expresaron que, en distintos momentos, recibieron *beepers* para abrir el mencionado portón y poder acceder a sus respectivas fincas. Arguyeron que, para el mes de julio de 2023, mientras el señor Vélez Flores entraba por la Calle Lukeliz hacia su finca, la señora López Quiñones se detuvo en el medio de la calle, le impidió el paso y le cuestionó acerca de sus intenciones con la finca, ya que él estaba realizando ciertos trabajos en ella. Subrayaron que, varios días más tarde, el señor Vélez Flores intentó visitar su finca y no logró abrir el portón debido a que la señora López Quiñones había cambiado los códigos y/o dispositivos electrónicos utilizados para abrirlo, sin proporcionales los nuevos.

Acentuaron que, en distintas instancias, le peticionaron a la señora López Quiñones la entrega de los nuevos códigos para tener acceso a sus fincas, pero que ésta se negó. Alegaron que, ante su negativa, buscaron auxilio del Tribunal mediante la Ley Núm. 140 de 23 de julio de 1974, según enmendada, mejor conocida como "Ley sobre Controversias y Estados Provisionales de Derecho". Indicaron que durante dicho pleito el Municipio de Canóvanas manifestó que el

portón instalado y el control de acceso en la calle pública Lukeliz no cumplía con la normativa legal establecida conforme a la Ley Núm. 107-2020, según enmendada, conocida como el "Código Municipal de Puerto Rico". Destacaron que el Tribunal determinó que no existían permisos de control de acceso aplicables a la Calle Lukeliz y que dicha carretera estaba destinada al uso público. Expresaron que la referida *Resolución* estuvo vigente hasta el 15 de diciembre de 2023 y que ocho (8) días más tarde, la señora López Quiñones nuevamente cambió el código de los dispositivos electrónicos para interrumpirles el paso. Añadieron que los Apelados instalaron dos (2) vallas de hormigón de manera transversal, impidiéndoles la entrada vehicular hacia su finca. Expresaron que el 6 de enero de 2024, el señor Vélez Flores intentó acceder a su finca y, al no tener éxito, informó al Negociado de la Policía de Puerto Rico sobre dichos hechos.

De igual manera, relataron que el 17 de enero de 2024 el señor Vélez Flores acudió nuevamente al Tribunal para solicitar acceso a su predio. Sostuvo que gestionó la instalación del servicio de agua potable con la Autoridad de Acueductos y Alcantarillados (en adelante, "AAA"), pero que la conducta ilegal de la señora López Quiñones llegó al extremo de obstruir el acceso de la AAA, razón por la cual dicho servicio aún no había podido ser instalado. Alegaron que las acciones de la señora López Quiñones han afectado gravemente sus vidas y han provocado un notable deterioro del terreno por la ausencia de mantenimiento constante. Por último, argumentaron que han experimentado estrés, angustias, preocupación constante y una pérdida económica considerable. En vista de lo anterior, le Peticionaron al Tribunal que ordenara: (1) el cese y desiste de las actuaciones de los Apelados, (2) a remover las vallas de hormigón y el vagón que impide la entrada, y (3) el pago de la cantidad de $75,000.00 por concepto de daños y perjuicios.

Así las cosas, el 21 de junio de 2024, el TPI emitió una *Resolución* a través de la cual declaró "Con Lugar" la solicitud de *injunction preliminar* y ordenó el cese y desista de cualquier acto de dominio que impidiera el acceso del Apelante y del señor Rivera González a su propiedad. De igual manera, ordenó la remoción de las vallas de hormigón, el vagón y el portón electrónico. Además, le requirió a la Asociación de Residentes que le proporcionaran el código de acceso al Apelante

y al señor Rivera González y le permitieran el acceso a la AAA. Posteriormente, el 24 de junio de 2024, la Asociación de Residentes, el señor Pérez Burgos, la señora Pelares López, la señora Morales y la señora López Quiñones presentaron una "**Moción de Auxilio Urgente**" en la que sostuvieron que el señor Vélez Flores, sin el consentimiento de los demás residentes, entró con una máquina para remoción de tierra y derrumbó un muro que se encontraba en un área verde perteneciente al Municipio de Canóvanas y el cual fue un requisito de construcción para la aprobación del desarrollo de la Hacienda de Cambalache. Enfatizaron que el mencionado muro tenía dos propósitos, a saber: (1) controlar la erosión y sedimentación y (2) separar un terreno privado de un camino dedicado a uso público. Añadieron que el señor Vélez Flores deforestó múltiples árboles sin contar con permisos de ninguna agencia administrativa.

En vista de lo anterior, le solicitaron al TPI que: (1) desestimara la "**Demanda**" de daños y perjuicios incoada, dado a que la Asociación de Residentes representa a los residentes de aproximadamente 15 viviendas y su función es velar porque los mismos vivan en paz y en armonía, (2) se ordenara al Municipio de Canóvanas a actuar como mediador, (3) le denegaran el acceso al Apelante y al señor Rivera González ya que éstos no contaban con solares aprobados por la entonces existente Administración de Reglamentos y Permisos (en adelante, "ARPe"), y (4) se declarara que las parcelas del Apelante y del señor Rivera González no están enclavadas, pues contaban con acceso por diversas rutas.

Más adelante, el 27 de junio de 2024, el Apelante y el señor Rivera González presentaron una "**Moción de Desacato**" en la que argumentaron que los Apelados han incumplido deliberadamente las órdenes del foro apelado y continuaban impidiéndoles el paso a sus propiedades, lo que les generó gastos innecesarios. Por lo tanto, le solicitaron al Tribunal que ordenara a los Apelados a cumplir con la orden judicial e impusiera las sanciones que considerara pertinentes. Ese mismo día, mediante *Orden*, el TPI apercibió a los Apelados que de incumplir con lo ordenado en la *Resolución* emitida el 21 de junio de 2024, aplicaría el Artículo 687 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3533.

El 1 de julio de 2024, el Apelante y el señor Rivera González presentaron una segunda "**Moción sobre Desacato**" mediante la cual le informaron al foro de instancia que los Apelados aún no habían cumplido con las órdenes emitidas por el Tribunal y que dicha negativa les había causado daños tanto emocionales como financieros. En sintonía con ello, le peticionaron nuevamente que ordenara a los Apelados a cumplir con la orden judicial en cuestión e impusiera el pago de $1,0000.00 por concepto de honorarios de abogado.

Posteriormente, el 7 de julio de 2024, los Apelados presentaron un escrito intitulado "**Contestación a Injunction[,] Moción de Desestimación[,] Moción de Reconsideración**" a través de la cual negaron la mayoría de las alegaciones expuestas en su contra y argumentaron que los emplazamientos diligenciados debieron incluir no solo la "**Orden de Injunction Preliminar**" emitida el 7 de junio de 2024, sino también la petición de "**Injunction**" presentada el 7 de junio de 2024, por lo que sostuvieron que los mismos son defectuosos. Señalaron que todo asunto relacionado al acceso, seguridad y desarrollo comunitario es un asunto exclusivo de la Asociación de Residentes y no de los miembros y oficiales de la corporación. Manifestaron que los miembros de dicha entidad jurídica no respondían por los deberes y obligaciones de la Asociación de Residentes cuando actúan como sus agentes. Alegaron que, conforme a lo anterior, procedía la desestimación de las reclamaciones instadas en contra de los miembros y oficiales de la Asociación, por no existir ninguna reclamación que justificara la concesión de un remedio.

Asimismo, reiteraron que las fincas pertenecientes al Apelante y al señor Rivera González no se encontraban enclavadas, ya que podían acceder a ellas por diferentes vías. Expresaron que el señor Rivera González puso en venta su finca a través de un anuncio colgado en internet en el cual indicó que su finca tenía acceso por los municipios de Canóvanas y Río Grande. Mencionaron que el plano de inscripción de la Hacienda Cambalache fue aprobado por la ARPe y que el mismo disponía para la instalación de un portón con control de acceso. Arguyeron que las vallas objeto de esta controversia pertenecen al Municipio de Canóvanas, por lo que dicho ayuntamiento debía ser considerado como parte indispensable del presente caso. Asimismo, expresaron que la finca del señor

Rivera González no colinda con la urbanización sino con la finca perteneciente al Sr. Luis E. Vázquez Elías (en adelante, el "señor Vázquez Elías"), por lo que sostuvieron que este último también era parte indispensable en el pleito. Por último, explicaron que la señora López Quiñones no fue quien detuvo la obra de la AAA, ya que la orden de detenerla provino del supervisor de dicha agencia.

Mediante dicho escrito, los Apelados también presentaron una "**Reconvención**" en la que argumentaron que el Apelante junto al señor Rivera González destruyeron el área verde donde culmina la Calle A y cuyo titular es el Municipio de Canóvanas. Expresaron que el muro de contención que el señor Vélez Flores derrumbó debía ser restituido para evitar que los ganados y los caballos continuaran perturbando la paz de los vecinos de la urbanización. De igual manera, manifestaron que la Calle A y la Calle Lukeliz debían ser restauradas y limpiadas a costo del Apelante y del señor Rivera González. En sintonía con ello, solicitaron que se desestimaran los reclamos incoados en su contra y se ordenara el pago de $2,000.00 por concepto de honorarios de abogados.

El 16 de agosto de 2024, el TPI emitió una *Resolución y Orden* en la que determinó que las partes fueron debidamente emplazadas mediante el diligenciamiento de los emplazamientos y la "**Demanda**" el 13 de junio de 2024 y el 17 de junio de 2024. Señaló que tanto el señor Vázquez Elías como el Municipio de Canóvanas son partes indispensables en el presente litigio, por lo que debían ser acumulados al pleito. También dejó sin efecto la *Resolución* emitida el 21 de junio de 2024. No obstante lo anterior, ordenó que se les mantenga el código de acceso de los *beepers* al Apelante y al señor Rivera González. Por último, declaró "No Ha Lugar" la "**Moción sobre Desacato**" presentada por estos últimos. De conformidad con dicha decisión, el 5 de septiembre de 2024, el señor Vélez Flores enmendó la "**Demanda**" a los fines de acumular al Municipio de Canóvanas como codemandado. El 24 de septiembre de 2024, la Asociación de Residentes presentó su "**Contestación Demanda Enmendada**" en la que negó la mayoría de las reclamaciones formuladas en su contra y reafirmó la posición sostenida en las mociones previamente sometidas.

Así las cosas, el 3 de diciembre de 2024, el Municipio de Canóvanas presentó su "**Contestación a Demanda Enmendada y Reconvención**" en la que, al igual que la Asociación de Residentes, rechazó la mayoría de las alegaciones expuestas en su contra y aclaró que el hecho de que exista una certificación aceptando la donación de las fajas de terreno identificadas como Calle "A" y Calle "Lukeliz" para uso público, no significa que dichas vías de rodaje provean acceso directo a la finca del Apelante. Destacó que los accesos legítimos a las fincas objeto de esta controversia se encuentran localizados fuera de la Urbanización Hacienda Cambalache. Expresó que la "Calle A" fue cedida para fines específicos que no incluyen el acceso vehicular. Indicó que las vallas fueron instaladas para controlar la erosión, sedimentación y problemas de seguridad reportados por los residentes de la Hacienda Cambalache.

Del mismo modo, sostuvo que cualquier inconveniente que el Apelante enfrentara para acceder a su propiedad se debía a que estaba intentando utilizar un acceso no autorizado dentro de la urbanización. Alegó que el Apelante debía presentar evidencia de que el presunto deterioro de su solar no se debía a su propio incumplimiento con las normativas vigentes. Finalmente, afirmó que las fajas de terreno identificadas como áreas verdes y calles públicas dentro de la Urbanización Hacienda Cambalache II y III no incluían acceso directo a la finca del Apelante, toda vez que existe una faja verde registrada como Finca Núm. 18,058 que separa dichas calles de su propiedad. Por último, en su "**Reconvención**" adujo que el señor Vélez Flores es responsable de los daños causados a la infraestructura pública ascendentes a la cantidad de $55,000.00. En vista de lo anterior, le solicitó al Tribunal que emitiera una orden permanente para que el Apelante cesara toda intervención no autorizada en las áreas públicas y verdes de la Urbanización Hacienda Cambalache II y III, ordenara el pago de la mencionada suma reclamada por concepto de daños y perjuicios y una suma razonable de honorarios de abogado.

El 26 de febrero de 2025, el señor Vélez Flores presentó su "**Réplica a Reconvención del Municipio de Canóvanas**", a través de la cual negó la mayoría de las afirmaciones presentadas en su contra, reiteró su postura y alegó que el muro objeto de esta controversia fue construido de manera ilegal dentro de

su finca. Asimismo, señaló que el resarcimiento reclamado es extremadamente alto y no guardaba relación con los hechos alegados. Agregó que tales reclamaciones, aun dándolas por ciertas, no son procedentes por estar prescritas. Finalmente, el 19 de marzo de 2025, el foro de instancia emitió una *Sentencia Parcial* en la que declaró "Ha Lugar" la *Moción de Desestimación* interpuesta por los Apelados, desestimando con perjuicio las acciones instadas en contra del señor Perales López, la señora Morales, la señora López Quiñones y la señora Pérez Burgos en su carácter personal. Insatisfecho con esta decisión, el Apelante presentó una "**Solicitud de Reconsideración en torno a Sentencia Parcial [104] del 19 de marzo de 2025**", la cual fue declarada "No Ha Lugar" el 7 de abril de 2025.

Aun inconforme con lo anterior, el Apelante presentó el recurso que nos ocupa mediante el cual le imputó al TPI la comisión de los siguientes errores:

> **PRIMER ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO CONSIDERAR LOS HECHOS OCURRIDOS PREVIO A QUE SE INCORPORARA LA ASOCIACIÓN DE RESIDENTES HACIENDA DE CAMBALACHE II Y III, INC., POR LOS QUE SE RECLAMA A LOS APELADOS EN SU CARÁCTER INDIVIDUAL.**

> **SEGUNDO ERROR: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LAS ALEGACIONES DE LA DEMANDA NO AMERITAN DECORRER EL VELO CORPORATIVO, AL AMPARO DE LA REGLA 10.2 (5) DE PROCEDIMIENTO CIVIL SIN QUE SE HUBIERA DESFILADO PRUEBA AL RESPECTO.**

El 9 de mayo de 2025, emitimos *Resolución* mediante la cual le concedimos un término a la parte apelada para que presentara su postura sobre el recurso de autos. Ha transcurrido en exceso del plazo concedido sin que dicha parte compareciera o presentara prórroga a esos efectos.

En vista de lo anterior, adjudicamos el recurso sin el beneficio de su comparecencia.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del

diligenciamiento del emplazamiento; (5) **que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio**; y (6) la falta de una parte indispensable. 32 LPRA Ap. V., R. 10.2; Rodríguez Vázquez y otros v. Hosp. Español Aux. Mutuo y otros, 215 DPR ___ (2025); 2025 TSPR 55.

Al considerar una moción para desestimar una demanda por ésta dejar de exponer una reclamación que justifique la concesión de un remedio, debe ser evaluada de forma crítica. Inmobiliaria Baleares, LLC v. Benabe González, 214 DPR ___ (2024), 2024 TSPR 112. Ello, puesto que el tribunal está obligado a tomar como ciertos los hechos bien alegados en la demanda. Hecha esta salvedad, el Tribunal interpretará las aseveraciones de la demanda en la forma más favorable para el demandante formulando en su favor todas las inferencias que puedan asistirle. Rivera Sanfeliz, *et al.* v. Jta. Dir. First Bank, 193 DPR 38, 49 (2015). De igual forma, nuestro más alto foro judicial ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 505 (1994).

Sobre este asunto, el Dr. José Cuevas Segarra expone que "[e]n la moción de desestima[ción] no se trata de poner en duda los hechos alegados en la demanda, sino atacarla por un vicio intrínseco, por ejemplo: insuficiencia, ausencia de parte indispensable, [o] falta de jurisdicción". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, San Juan, Tomo I, 2000, pág. 275.

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". Pressure Vessels PR. v. Empire Gas P.R., *supra*, pág. 505. Consecuentemente, se debe considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. El Día, Inc. v. Mun. de Guaynabo, 187 DPR

811, 821 (2013); Consejo Titulares v. Gómez Estremera, 184 DPR 407, 423 (2012).

Relacionado con lo anterior, la jurisprudencia ha identificado casos que contienen elementos subjetivos, de intención, propósitos mentales o negligencia. A saber, "controversias en las que el factor credibilidad juega un papel esencial, si no decisivo, para llegar a la verdad, y donde un litigante depende en gran parte de lo que extraiga del contrario en el curso de un juicio vivo". Rosario Ortiz v. Nationwide Mutual Insurance Co., 158 DPR 775, 780-81 (2003). A esos efectos, "la privación a un litigante de su 'día en corte' es una medida procedente sólo en casos extremos y que debe usarse solamente en casos claros. Íd., pág. 780.

**B.**

Entre las aportaciones más fundamentales del ordenamiento jurídico al ámbito mercantil, se destaca la creación de entes jurídicos de naturaleza ficticia a los que se les confiere características pertenecientes a las personas naturales. En esa dirección, la Ley Núm. 164-2009, según enmendada, mejor conocida como la "Ley General de Corporaciones", 14 LPRA sec. 3501 *et seq.*, fue promulgada con el fin ulterior de agilizar la administración corporativa y simplificar los procedimientos que en ella se disponen. Asimismo, busca promover el uso de nuevas tecnologías por parte de las corporaciones, posicionando a Puerto Rico a la vanguardia en materia de legislación corporativa. Además, procura otorgar mayor flexibilidad a las corporaciones en cuanto a sus operaciones, las actividades que pueden realizar y la ejecución de transacciones. *Véase*, Exposición de Motivos de la Ley Núm. 164, *supra*. Con miras a cumplir los fines propuestos, el referido estatuto le reconoce a las corporaciones una personalidad jurídica distinta y separada de sus inversionistas. Miramar Marine *et al.* v. Citi Walk *et al.*, 198 DPR 684, 691 (2017). Lo anterior implica que, como norma general, los accionistas o miembros de la entidad responden por las deudas y obligaciones de la empresa hasta el monto de su inversión, pero no responden personalmente por éstas. C.E. Díaz Olivo, Corporaciones: Tratado sobre Derecho Corporativo, 2016, pág. 2.

No obstante lo anterior, existen instancias en las que los integrantes de la corporación pueden ser responsables por las deudas y obligaciones que contrae

la entidad a la que pertenecen. Esto se debe a que nuestro ordenamiento jurídico no reconoce la ficción de la personalidad corporativa cuando su invocación equivale a la comisión de un fraude, la promoción de una injusticia, la evasión de obligaciones legales, la frustración de la política pública, la justificación de la inequidad, la protección de actos fraudulentos o la defensa de conductas delictivas. Srio D.A.C.O. v. Comunidad San José, Inc., 130 DPR 782, 798 (1992).

Cuando se incurre en alguno de los actos mencionados, aplica la doctrina de descorrer el velo corporativo que conlleva la suspensión de la exención de responsabilidad limitada que, de ordinario, asiste a los accionistas de una corporación con respecto a las deudas y obligaciones para hacerlos responsables de éstas. Díaz Olivo, *op. cit.*, pág. 117. Dicha doctrina también es aplicable cuando una corporación es el *alter ego* o conducto económico pasivo de sus accionistas y cuando entre éstos y la corporación existe tal identidad de interés que las personalidades de la corporación y de los accionistas se hallan confundidas, de manera que la corporación en realidad no es una persona jurídica independiente y separada. D.A.C.o. v. Alturas Fl. Dev. Corp. y Otro, 132 DPR 905, 925 (1993). El profesor Díaz Olivo ha señalado que, según nuestra jurisprudencia, los principios rectores para la aplicación de esta doctrina son los siguientes, a saber:

(1) La aplicación de la doctrina depende de los hechos específicos de cada caso;

(2) El ignorar la entidad corporativa constituye la excepción a la regla;

(3) La corporación posee una personalidad jurídica separada y distinta de sus accionistas y la regla general es al efecto de que la existencia de la corporación, independientemente de sus accionistas no puede ser ignorada o descartada;

(4) El fracaso de la corporación en su gestión económica, su administración deficiente, y la falla en observar las formalidades corporativas, no son por sí mismos, razón suficiente para desconocer la entidad;

(5) El mero hecho de que una persona sea el único accionista de una corporación no conlleva de por sí la imposición de responsabilidad individual.

(6) El peso de la prueba recae sobre la parte que busca descorrer el velo y propone la imposición de responsabilidad individual a los accionistas;

(7) El peso de la prueba no se descarga con la mera alegación de que la empresa es un alter ego de los accionistas;

(8) La prueba del que solicita el desconocimiento debe ser prueba fuerte y robusta;

(9) Corresponde a la parte que propone el levantamiento del velo presentar prueba que demuestre que:
  (i)    Existe tal identidad de interés y propiedad, que la corporación y la persona de sus accionistas se hallen confundidas; y

  (ii)   que los hechos sean de tal naturaleza que el sostener la ficción de la corporación derrota la política pública por equivaler a sancionar la utilización de la corporación para perpetuar un fraude o promover una injusticia o ilegalidad. Díaz Olivo, *op. cit.*, págs. 120-121.

En otras palabras, el descorrimiento del velo corporativo constituye un remedio excepcional cuya procedencia depende de las circunstancias particulares del caso y solo se justifica cuando se demuestre una confusión sustancial entre la personalidad jurídica de la corporación y la de sus accionistas. Por último, es menester aclarar que el peso de la prueba descansa sobre la persona que solicita la imposición de responsabilidad personal a los accionistas y corresponde al Tribunal de Primera instancia, luego de valorar la prueba presentada, determinar si procede el levantamiento del velo corporativo. D.A.C.o. v. Alturas Fl. Dev. Corp. y Otro, *supra*, pág. 926. Además, no basta con alegar que la corporación constituye el *alter ego* de una persona natural, sino que es indispensable presentar evidencia concreta que demuestre que no se mantuvo una separación adecuada entre la personalidad jurídica de la corporación y la del accionista. Íd. 927.

**III.**

En el presente caso, el Apelante nos solicitó la revocación de la *Sentencia Parcial* del TPI en la que se declaró "Ha Lugar" la *Moción de Desestimación* presentada por los Apelados.

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se tratarán de forma conjunta en la discusión. En síntesis, el señor Vélez Flores sostiene que el TPI erró al no considerar los hechos ocurridos previo a que se incorporara la Asociación de Residentes Hacienda de Cambalache II y III, Inc., por los que se reclama a los Apelados en su carácter personal y al determinar que las alegaciones de la "**Demanda**" y la "**Demanda Enmendada**" no ameritan descorrer el velo corporativo sin que se hubiera desfilado prueba al respecto. Veamos.

Del expediente ante nuestra consideración se desprende que el 7 de junio de 2024 el Apelante, junto al señor Rivera González, presentó la "**Demanda**" original en contra de la Asociación de Residentes, el señor Perales López, la señora Morales y la señora López Quiñones, todos en su carácter personal, así como a sus cónyuges y respectivas sociedades legales de bienes gananciales por presuntamente éstos haberles prohibido el paso a sus propiedades, las cuales colindan con la urbanización Hacienda Cambalache. El 21 de junio de 2024, el foro de instancia ordenó el cese y desiste de cualquier acto de dominio que le impidiera el acceso del señor Vélez Flores y del señor Rivera González a sus fincas. Tras múltiples trámites procesales, el 7 de junio de 2024 los Apelados presentaron una *Moción de Desestimación.* En esencia, argumentaron que procedía la desestimación de las reclamaciones incoadas en contra de los miembros de la Asociación de Residentes, puesto que éstos no responden por los deberes y obligaciones de dicha entidad cuando actúan como sus agentes. Así las cosas, el 19 de marzo de 2025, el foro *a quo* declaró "Ha Lugar" dicha solicitud bajo el fundamento de que el Apelante y el señor Rivera González no alegaron en la "**Demanda**" original ni en la "**Demanda Enmendada**" que la Asociación de Residentes estuviera confundida con la de sus miembros u oficiales ni que éstos estuvieran utilizando la corporación para perpetuar un fraude o promover una injusticia o ilegalidad que justificara descorrer el velo corporativo.

Como mencionáramos en los acápites anteriores, la Regla 10.2 de Procedimiento Civil, *supra*, le permite a una parte solicitar la desestimación de las alegaciones formuladas en su contra por dejar de exponer una reclamación que justifique la concesión de un remedio. Al considerar este tipo de solicitud, el tribunal está obligado a tomar como ciertos los hechos bien alegados en la demanda. Igualmente, deberá interpretar dichas aseveraciones en la forma más favorable para el demandante formulando en su favor todas las inferencias que puedan asistirle. Rivera Sanfeliz, et al. v. Jta. Dir. First Bank, *supra*, pág. 49.

Por otra parte, como norma general, los accionistas o miembros de una corporación responden por las deudas y obligaciones de la entidad hasta el monto de su inversión, pero no responden personalmente por éstas. Díaz Olivo, *op. cit.*, pág. 2. Sin embargo, existen instancias en las que los integrantes de la

corporación pueden ser responsables por las obligaciones que contrae la misma. En concordancia con ello, se hace necesario descorrer el velo corporativo de una entidad cuando: (1) existe tal identidad de interés y propiedad, que la corporación y la persona de sus miembros se encuentran confundidas y (2) cuando los hechos son de tal naturaleza que sostener la ficción de la corporación derrotaría la política pública, ya que equivaldría a sancionar la utilización de la corporación para perpetuar un fraude o promover una injusticia o ilegalidad. Srio D.A.C.O. v. Comunidad San José, Inc., *supra*, pág. 298; D.A.C.o. v. Alturas Fl. Dev. Corp. y Otro, *supra*, pág. 925.

En el presente caso, el Apelante alega que el TPI no debió haber desestimado la "**Demanda Enmendada**" respecto a los miembros de la Asociación de Residentes en su carácter personal, ya que la mencionada entidad se incorporó el 6 de diciembre de 2023 y los hechos que relata en su escrito se remontan a fechas anteriores, específicamente al mes de julio de 2023. Igualmente, argumentó que el TPI no debió haber descartado la procedencia del descorrimiento del velo corporativo para los hechos ocurridos luego de que se creara e incorporara la referida Asociación en el Departamento de Estado.

Tras un examen minucioso del expediente ante nuestra consideración, incluyendo la "**Demanda**" original, la "**Demanda Enmendada**", la *Moción de Desestimación,* su correspondiente *Oposición*, la *Reconvención* y su correspondiente *Réplica*, hemos arribado a la conclusión de que no procedía la desestimación de la causa de acción sobre daños y perjuicios interpuesta en contra de la señora López Quiñones, pero sí con respecto al restante de los Apelados. Nos explicamos.

Del contenido de la "**Demanda**" original se desprende que el señor Vélez Flores y el señor Rivera González le imputan a la señora Lopez Quiñones una serie de actuaciones presuntamente lesivas que tuvieron lugar en el mes de julio de 2023. Específicamente, indicaron lo siguiente:

9. Para el mes de julio de 2023, mientras el codemandado Vélez Flores entraba por la calle Lukeliz hacia su finca, la codemandada López Quiñones, parándose en medio de la calle le impidió el paso, le increpó sobre cuales eran sus intenciones con la finca por unos trabajos que este realizaba en su finca. El codemandante Vélez Flores escuchó a la codemandada y siguió camino a su finca.

10. Varios días después, el codemandante Vélez Flores se disponía a visitar a su finca y no puedo abrir el portón debido a que la codemandada Rosa López, cambió los códigos y/o *beppers* con los que electrónicamente abren el portón que instalaron en la calle Lukeliz, no entregó los nuevos códigos a los demandantes. Con esa acción, les impidió el paso a los demandantes a sus respectivas fincas.[1]

En este contexto, resulta importante destacar que la Asociación de Residentes de la Urbanización Cambalache II y III fue incorporada en el Departamento de Estado el 6 de diciembre de 2023.[2] A la luz de lo anterior, es evidente que los actos atribuidos a la señora López Quiñones habrían ocurrido antes de la existencia legal de dicha entidad. Dados por ciertos, para fines de este análisis, los hechos previamente citados que presuntamente ocurrieron durante el mes de julio de 2023 y considerando que los mismos preceden a la constitución de la persona jurídica objeto de esta controversia, entendemos que existe una reclamación válida en contra de la señora López Quiñones que podría justificar la concesión de un remedio.

Ello obedece a que, para la fecha de los hechos en cuestión, no existía una corporación que limitara la responsabilidad de sus miembros u oficiales. Esto es, para el mes de julio de 2023 la señora López Quiñones no gozaba del beneficio de responsabilidad limitada que ofrece nuestro ordenamiento jurídico a través de las corporaciones. Por consiguiente, de probarse tales actos, la señora López Quiñones podría responder por ellos en su carácter personal. En fin, al interpretar dichas aseveraciones de la forma más favorable para el señor Rivera González y el señor Vélez Flores, conforme al estándar aplicable en esta etapa del procedimiento, concluimos que la causa de acción dirigida contra la señora López Quiñones es plausible y, por consiguiente, no debe ser desestimada.

Por último, coincidimos con el foro *a quo* en que no procede descorrer el velo corporativo de la Asociación de Residentes. Lo anterior se sustenta en el hecho de que el Apelante no incluyó en su "**Demanda**" original ni en la "**Demanda Enmendada**" alegaciones que justifiquen tal medida extraordinaria. En específico, no planteó que la referida Asociación de Residentes estuviera operando de forma indistinta o confusa respecto a sus miembros u oficiales, ni que funcionara como

---

[1] *Véase*, Apéndice del Recurso de Apelación, pág. 5.
[2] Tomamos conocimiento judicial del Certificado de Incorporación de la Asociación, de conformidad con la Regla 201 de las de Evidencia, 32 LPRA Ap. VI, R. 201, y según las constancias del Registro de Corporaciones del Departamento de Estado.

un mero *alter ego* de éstos. Tampoco alegó que la estructura corporativa haya sido utilizada como instrumento para defraudar a terceros o cometer actuaciones ilícitas. Por tanto, no existe base legal que justifique la suspensión de la exención de responsabilidad limitada que cobija a los miembros de la Asociación de Residentes por los actos ocurridos a partir del 6 de diciembre de 2023, fecha en que la entidad fue incorporada conforme establece nuestro ordenamiento jurídico.

Acoger la postura del Apelante sobre el particular, sería reconocer una causa de acción o alegaciones que nunca fueron esbozadas por éste y el señor Rivera González ante el TPI. En vista de lo anterior, concluimos que la juzgadora de instancia actuó correctamente al desestimar las causas de acción incoadas en su **carácter personal** en contra del señor Perales López, la señora Morales, el señor Pérez Burgos y sus correspondientes sociedades legales de gananciales. Distinto al caso de la señora López Quiñones, contra quien se efectuaron alegaciones específicas por hechos presuntamente ocurridos en el mes de julio de 2023 que ocasionaron unos daños, en contra de dichos Apelados no se formuló alegación alguna que precediera a la incorporación de la Asociación de Residentes en el Departamento de Estado.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* en la *Sentencia Parcial* en cuanto a la desestimación de las causas de acción formuladas en contra del señor Perales López, la señora Morales, el señor Pérez Burgos y sus correspondientes sociedades legales de gananciales, **en su carácter personal**, y se *revoca* en parte en cuanto a la desestimación del pleito en contra de la señora López Quiñones, **también en su carácter personal**.

Se devuelve el caso ante el foro de instancia para la continuación de los procedimientos consistentes con la presente *Sentencia*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones